Beverly **WILKEY**

v.

**PYRAMID CONSTRUCTION COMPANY**
**and Majestic Construction**
**Company, Inc.**

**Civ. No. H-85-93 (PCD).**

United States District Court,
D. Connecticut.

Oct. 17, 1985.

Robert Bourne, and Peter Harrington, Certified Student Interns, Philip D. Tegeler, Civil Litigation Clinic, Hartford, Conn., for plaintiff.

Eliot B. Gersten, Gersten & Gersten, Hartford, Conn., for defendants.

**RULING ON MOTION TO DISMISS**

DORSEY, District Judge.

Plaintiff, Beverly Wilkey, was employed by defendants, Pyramid Construction Com-

pany and Majestic Construction Company, Inc. Defendants are alleged to own and manage the Sutton Park Apartments in Bloomfield, Connecticut. Plaintiff worked as a part-time rental secretary, who received applications from, and showed and rented apartments to, prospective tenants. Plaintiff, who is white, alleges that it was defendants' policy to discriminate on the basis of race by depriving black applicants of the opportunity to view and rent apartments on an equal basis with whites. Plaintiff alleges that her opposition to defendants' asserted policy of racial discrimination, and her unwillingness to adhere to it, caused or contributed to her eventual discharge some ten weeks after she took the position.

Plaintiff seeks money damages and injunctive relief. Her four-count complaint[1] asserts violations of: (1) Title VIII of the Civil Rights Act of 1968 (also known as the Fair Housing Act), 42 U.S.C. §§ 3601–3631 ("FHA"); (2) the Civil Rights Act of 1866, specifically 42 U.S.C. §§ 1981–1982 ("Civil Rights Act"); and (3) Connecticut's common law of wrongful discharge, as recognized in *Sheets v. Teddy's Frosted Foods*, 179 Conn. 471, 427 A.2d 385 (1980), and *Magnan v. Anaconda Indus.*, 193 Conn. 558, 479 A.2d 781 (1984). Defendants have moved to dismiss all claims. For the reasons below, the motion to dismiss is granted in part and denied in part.

### A. *FHA Claim*

The FHA declares it to be "the policy of the United States to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. To give effect to that policy, § 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex or national ori-

gin;" § 3604(d) proscribes "represent[ing] to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale or rental when such dwelling is in fact so available." Section 3617 protects those who exercise rights guaranteed by the FHA:

It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section ... 3604 ... of this title. This section may be enforced by appropriate civil action.

Plaintiff's first count is predicated on § 3617. She charges that defendants "coerc[ed], intimidat[ed] and threaten[ed] the plaintiff on account of her having aided or encouraged black persons in the exercise and enjoyment of their rights granted by 42 U.S.C. § 3601 *et seq.*" Second Amended Complaint at ¶ 26.[2] She alleges that defendants' coercion, intimidation and interference took the form of reducing her job responsibilities, and then terminating her employment. *Id.* at ¶ 17. Defendants' attacks on the viability of the § 3617 claim contained in Count I are without merit.

Defendants first assert that plaintiff has failed adequately to allege steps taken which "aided or encouraged" others in the exercise of their rights. Although defendants acknowledge plaintiff's claim that she accepted applications from, and showed and rented apartments to, black prospective tenants, defendants characterize that involvement as merely "performing her function as an employee." Defendants' Memorandum at 4. According to defendants, the FHA requires those who would invoke its protection to take a more "active role" in furthering its objectives— such as, for example, by *"recruit[ing]* po-

---

1. Plaintiff's motion for leave to file a second amended complaint, which elaborates upon certain factual allegations and adds a claim under 42 U.S.C. § 1981, is granted. Rule 15(a), Fed.R. Civ.P.

2. Defendants have moved in the alternative for a more definite statement of plaintiff's various claims. The motion is denied. Plaintiff has adequately pleaded to permit defendants to frame an intelligible response. Rule 12(e), Fed. R.Civ.P.

tential black tenants to the location ...." *Id.* (emphasis added). No authority supportive of this proposition has been cited or discovered.[3] "Aid" or "encouragement" under § 3617 does not require anything more—qualitatively or quantitatively—than what plaintiff did here. On its face and as construed by the courts, § 3617 is not limited to plaintiffs whose "aid" or "encouragement" to persons exercising fair housing rights is given outside the confines of their job descriptions.

Nor is there even colorable merit in defendants' attempt to challenge plaintiff's standing in this case by seeking to minimize or distinguish the relevance of the decisions in *Tokaji v. Toth*, 1 Eq. Opp. Hsing Rptr. (PH) ¶ 13,679 (N.D.Ohio 1974) (recognizing a § 3617 claim in favor of apartment building superintendents allegedly forced to vacate their apartments after expressing dissatisfaction with landlord's policy not to rent to blacks); *Smith v. Stechel*, 510 F.2d 1162 (9th Cir.1975) (recognizing a § 3617 action in favor of apartment managers fired for renting to blacks and Mexican-Americans); and *Vercher v. Harrisburg Housing Auth.*, 454 F.Supp. 423, 424 (M.D.Pa.1978) (noting that a plaintiff "discharged for his efforts to secure fair housing rights for others ... would clearly have a cause of action under § 3617"). While defendants are not incorrect in noting, Reply Memorandum at 3–4, that the cited authorities do not *expressly*

determine the issue of standing, they hardly leave the question open. Only a highly artificial reading of such decisions—a reading which would suggest that the authoring courts were oblivious to concerns of judicial administration—could permit the argument that these holdings are of no consequence in determining the preliminary standing question.

These authorities will not be so read, and § 3617 is held to be invocable by a rental agent or secretary claiming to have been harassed, demoted and ultimately terminated for resisting and refusing to execute her employer's allegedly racially discriminatory housing policies. Accordingly, the motion to dismiss Count I is denied.

## B. *Sections 1981 and 1982*

In addition to her FHA claim, plaintiff asserts federal claims under two provisions of the Civil Rights Act codified respectively at 42 U.S.C. § 1981 (guaranteeing all citizens an equal right to contract), and 42 U.S.C. § 1982 (guaranteeing all citizens an equal right to hold and convey property).[4] Following the admonition that "it would be most incongruous to give these two statutes a fundamentally different construction," *Runyon v. McCrary*, 427 U.S. 160, 190, 96 S.Ct. 2586, 2604, 49 L.Ed.2d 415 (1976) (Stevens, J., concurring), the Supreme Court has held that housing discrimination practices impinging on equality of

---

3. Defendants refer to *Meadows v. Edgewood Management Corp.*, 432 F.Supp. 334 (W.D.Va. 1977), which, like the instant case, involved a rental agent who was discharged by management allegedly for aiding and encouraging a tenant to exercise rights guaranteed by the FHA. The court found that plaintiff had failed to prove by a preponderance of the evidence that she actually did aid and encourage that particular tenant. However, the court also specifically found "that section 3617 provides a remedy in a situation where a resident manager ... [is] dismissed by [her] employers because of [her] aid or encouragement to tenants in asserting their right to fair housing." *Id.* at 335. Thus, *Meadows* is actually better authority for plaintiff than defendants, because had the rental agent in that case been able to *prove* her factual allegations, her status as a rental agent would not have prevented the court from sustaining her § 3617 claim.

4. Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishments, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Section 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

contract and property rights may be violative of §§ 1981 and 1982 independently of whether the practices are proscribed by the FHA. *See, e.g., Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 441–43 & n. 78, 88 S.Ct. 2186, 2189, 2204–05 & n. 78, 20 L.Ed.2d 1189 (1968).

■ Thus, the remedies provided by §§ 1981 and 1982 are also independent from those provided by the FHA, *id.* at 416–17, 88 S.Ct. at 2190–91, and may be utilized to grant appropriate relief in a case within the coverage of both the FHA and the Civil Rights Act. The two statutes differ as to the award of attorney's fees and punitive damages. The FHA generally limits punitive damages in private housing discrimination cases to $1000, and awards attorney's fees only to prevailing plaintiffs found financially unable to assume them. 42 U.S.C. § 3612(c). A plaintiff who prevails on a claim under the Civil Rights Act is entitled to attorney's fees without regard to financial status, and punitive damages are not subject to any cap such as the $1000 limitation under the FHA. 42 U.S.C. § 1988.

The FHA and the Civil Rights Act also approach differently the question of standing, particularly with regard to claims by "indirect" or third-party victims of discrimination, as plaintiff appears to be. *Compare, e.g., Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (indirect victims' standing upheld under the FHA, Congress having therein expressed an intention to confer standing as broad as the Constitution would allow, i.e., requiring solely that plaintiff be injured "in fact" without "prudential" limitations on the exercise of constitutional jurisdiction), *and Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), *with Warth v. Seldin,* 422 U.S. 490, 512–14, 95 S.Ct. 2197, 2212–13, 45 L.Ed.2d 343 (1975) (denying standing in a *Trafficante* -type indirect claim raised under 42 U.S.C. §§ 1981, 1987 and 1983, inasmuch as in said provisions Congress left intact traditional "prudential" limitations on the exercise of federal jurisdiction over claims raised by those

whose individual rights would not be vindicated by granting the relief requested).

Defendants' principal argument regarding §§ 1981 and 1982 is that the standing of an indirect victim of racial discrimination under the Civil Rights Act requires a connection with "an injury to a ... property right ... protected by the express language of the statute ... such as the right to contract [§ 1981] or to deal in real estate [§ 1982]." Reply Memorandum at 7. Defendants appear to assert that because plaintiff acted as an agent for others (i.e., defendants) who owned the property which was the subject of the rental contracts and real estate transactions at issue here, she has suffered no injury to any property or contractual right of her own, and is insufficiently "connected" with the property or contract rights of any putative minority homeseekers to maintain this action.

■ Our Court of Appeals has recognized that a white person claiming to have suffered job-related reprisals as a result of his efforts to vindicate the rights of non-whites had standing under § 1981. *DeMatteis v. Eastman Kodak,* 511 F.2d 306 (2d Cir.1975). *See also, Winston v. Lear-Sigler, Inc.,* 558 F.2d 1266 (6th Cir.1977) (a white plaintiff has standing to sue his former employer under § 1981 for discharging him in alleged retaliation for protesting the alleged discriminatory firing of a black co-worker). By virtue of the impairment of her employment status which plaintiff alleges to have been the indirect result of defendants' discriminatory policies, plaintiff has sufficient standing to pursue her § 1981 claim.

■ Plaintiff's § 1982 claim, however, is subject to a more substantial standing objection. In *Sullivan v. Little Hunting Park,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), a white homeowner was held to have standing to pursue a § 1982 claim against a neighborhood association recreational park which had blocked the assignment of his membership share to his black tenant. Unlike the homeowner in *Sullivan,* plaintiff cannot demonstrate that a

property right or interest of her own is involved in this case.

Accordingly, the motion to dismiss Count II (§ 1981 claim) is denied. The motion as to Count III (§ 1982) claim is granted.

### C. *Wrongful Discharge*

Defendants have moved that the court dismiss plaintiff's wrongful discharge count, a state law claim brought pursuant to the court's pendent jurisdiction. Defendants assert that plaintiff has failed to allege facts sufficient to state a claim upon which relief can be granted under Connecticut's evolving law of wrongful discharge. Plaintiff argues forcefully that her state law claim falls within the contours of the exception to the general rule that employment contracts for an indefinite term are terminable at will. *See Sheets v. Teddy's Frosted Foods*, 179 Conn. at 471, 427 A.2d 385.

Notwithstanding plaintiff's showing, the court deems it inappropriate in this instance to exercise its discretion to hear the state law claim. The Supreme Court has instructed federal judges regarding pendent jurisdiction that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). The federal claims raised by plaintiff provide a vehicle for the presentation of that part of plaintiff's claim susceptible to treatment as a wrongful discharge claim. Moreover, the remedies available to her under the federal causes of action are as broad, if not broader, than the remedies available for the state law claim. The exercise of pendent jurisdiction, therefore, would be "needless" in this case, and likely to engender "jury confusion in dealing with the differing legal theories of relief." *Id.* at 727, 86 S.Ct. at 1139.

Accordingly, defendants' motion to dismiss Count IV is granted.

SO ORDERED.