**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Keith Dwayne GILBERT,**
**Defendant-Appellee.**

No. 86–3072.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 3, 1986.

Decided April 6, 1987.

---

■■■■■■■■■■■■■■■

Wm. Bradford Reynolds, Irving Gornstein and Lisa J. Stark, Washington D.C., for plaintiff-appellant.

Kim R. Lindquist, Weiser, Idaho, for defendant-appellee.

Before HUG, SKOPIL and FLETCHER, Circuit Judges.

SKOPIL, Circuit Judge:

Defendant-appellee Keith Dwayne Gilbert was charged in a one-count information and a four-count indictment of violating the Fair Housing Act, 42 U.S.C. § 3631(b) and (c) (1982). The district court dismissed the information for failure to state an offense. The government requested a continuance of the trial on the indictment charges or, alternatively, a dismissal without prejudice. The district court denied the continuance, and when the government refused to proceed to trial, the court dismissed the indictment with prejudice. We reverse and remand.

## FACTS AND PROCEEDINGS BELOW

Gilbert allegedly mailed racially derogatory and threatening correspondence to the director of an adoption organization responsible for the placement and adoption of black and Asian children in Kootenai County, Idaho. The correspondence consisted of a letter condemning the agency's actions and flyers threatening death to minorities and those who associate with minorities. Gilbert was charged by information with violating 42 U.S.C. § 3631(c). The information alleged that he willfully intimidated and interfered with the director to discourage her from aiding minority children's occupancy of dwellings in Kootenai County.

After the information was filed, a grand jury returned a four-count indictment against Gilbert. The indictment charged Gilbert with violating 42 U.S.C. § 3631(b). Gilbert allegedly (1) drove an automobile at a black child; (2) verbally threatened a white male who has a black step-brother; (3) ordered his dog to attack a black child; and (4) spat in the face of a mentally retarded black child.

After arraignment Gilbert waived his right to a speedy trial and requested a continuance. The district court granted the continuance and excluded the period of delay from any future speedy trial calculations. The court subsequently approved the government's motion to join the information and the indictment for trial.

On the day before trial, the district court granted Gilbert's motion to dismiss the information for failure to charge an offense under section 3631(c). The court denied a motion for reconsideration. A request for continuance of the trial on the indictment charges was also denied. Finally, the government moved to dismiss the indictment without prejudice. The district court rejected that motion and dismissed with prejudice. The government appeals, contending that (1) section 3631 reaches interference with the director of an adoption agency; and (2) the district court erred when it dismissed the indictment with prejudice.

## DISCUSSION

### A. Dismissal of the Information

The Fair Housing Act, 42 U.S.C. §§ 3601–3631 (1982), originated as Title VIII of the Civil Rights Act of 1968, Pub.L. No. 90–284, § 801 *et seq.*, 82 Stat. 81–89 (1968). The "Prevention of Intimidation" section was attached to the civil rights legislation as Title IX and incorporated into the Fair Housing Act as section 901, 82 Stat. 89 (1968). The text of section 901, as codified and amended at 42 U.S.C. § 3631 (1982), provides:

Whoever, whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—

(a) any person because of his race, color, religion, sex, or national origin and because he is or has been selling, purchasing, renting, financing, occupying, or contracting or negotiating for the sale, purchase, rental, financing or occupation of any dwelling, or applying for or participating in any service, organization, or facility relating to the business of selling or renting dwellings; or

(b) any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from—

(1) participating, without discrimination on account of race, color, religion, sex, or national origin, in any of the activities, services, organizations or facilities described in subsection (a) of this section; or

(2) affording another person or class of persons opportunity or protection so to participate; or

(c) any citizen because he is or has been, or in order to discourage such citizen or any other citizen from lawfully aiding or encouraging other persons to participate, without discrimination on account of race, color, religion, sex, or national origin, in any of the activities, services, organizations or facilities described in subsection (a) of this section, or participating lawfully in speech or peaceful assembly opposing any denial of the opportunity to so participate—

shall be fined not more than $1,000, or imprisoned not more than one year, or both; and if bodily injury results shall be fined not more than $10,000, or imprisoned not more than ten years, or both; and if death results shall be subject to imprisonment for any term of years or for life.

■ In applying this statutory provision the district court concluded that "adoption efforts focus on placement of a child with a family and not on placement of a child in a dwelling." The court admitted that "placement with a family necessarily requires placement in a dwelling." Nonetheless, the district court found that the connection between the activities of an adoption agency and the occupation of a dwelling was "simply too remote." The government argues that the district court construed too narrowly the reach of protected activities and the definitions of "dwelling" and "occupation." Gilbert, on the other hand, maintains that the district court properly interpreted the statute to protect only someone who actively, primarily, and directly helps a protected class occupy a dwelling.

### 1. Standard of Review

Our review is **de novo.** *See United States v. Louisiana-Pacific Corp.,* 754 F.2d 1445, 1447 (9th Cir.1985) (interpretation of a statute is reviewed **de novo**); *United States v. Christopher,* 700 F.2d 1253, 1257 (9th Cir.) (sufficiency of information is reviewed **de novo**), *cert. denied,* 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 321 (1983). Criminal statutes are to be strictly construed in favor of an accused, *see United States v. Kelly,* 527 F.2d 961, 964 (9th Cir.1976), but that principle does not allow us to ignore a statute's evident purposes, *United States v. Hurt,* 795 F.2d 765, 770 (9th Cir.1986).

### 2. Statutory Interpretation

The Fair Housing Act is intended "to provide, within constitutional limitations, for fair housing throughout the United States." 42 U.S.C. § 3601. The Supreme

Court has observed that this expansive approach is carried throughout the Act, and that the Act as a whole is "broad and inclusive" and should be given "generous construction." *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 209, 212, 93 S.Ct. 364, 366–67, 368, 34 L.Ed.2d 415 (1972), *accord Metropolitan Housing Development Corp. v. Village of Arlington Heights*, 616 F.2d 1006, 1011 (7th Cir.1980).

Although the language of the Act is broad, it is also specific. In section 3631, Congress describes both protected and prohibited activities. The government claims that the plain meaning of section 3631 includes activities of an adoption agency attempting to place minority children in a community. We agree that the director of an adoption agency is indeed potentially covered under the plain meaning of subsection (c), as "any citizen ... lawfully aiding or encouraging other persons to participate, without discrimination ... in any of the activities ... described in subsection (a)." 42 U.S.C. § 3631(c). The critical issue in our minds, however, is whether the placement of minority children by an adoption agency is a protected activity under subsection (a), as those activities are incorporated into subsection (c). The activities listed in subsection (a) include the "selling, purchasing, renting, financing, occupying, or contracting or negotiating for the sale, purchase, rental, financing, or occupation of any dwelling." 42 U.S.C. § 3631(a).

Legislative history of section 3631 is sparse because the section was added during debate in the Senate (114 Cong.Rec. 4570–4573 (1968)). Civil rights legislation, now codified at 18 U.S.C. § 245 (1982), was the model for section 3631. When section 3631 was introduced in Congress, its sponsors noted the similarity to the criminal provisions of section 245. The criminal sanctions of section 245, and section 3631 by implication, reflect a broad purpose. "Experience teaches that racial violence has a broadly inhibiting effect upon the exercise by members of the Negro community of their Federal rights to nondiscriminatory treatment. Such violence must, therefore, be broadly prohibited if the enjoyment of those rights is to be secured."

S.Rep. No. 721, 90th Cong., 2d Sess., **reprinted in** 1968 U.S.Cong. & Admin.News 1837, 1842. We believe this underlying purpose was given effect through the specific list of protected activities in section 3631. Significantly, there are no exceptions or exclusions in the entire section. To the contrary, the language invites an expansive interpretation to the list of protected activities.

Case law also supports a broad interpretation of the Act. Many cases brought under section 3631 present clear violations. In *United States v. Redwine*, 715 F.2d 315 (7th Cir.1983), *cert. denied*, 467 U.S. 1216, 104 S.Ct. 2661, 81 L.Ed.2d 367 (1984), for example, the court upheld convictions under section 3631 where the defendants threw rocks, shouted racial epithets and threats, and eventually firebombed a black family's home to intimidate them to leave the community. But section 3631 has also been applied to situations where the "dwelling" and the "occupation" were less distinct than in *Redwine*.

"Dwelling," as used in the Fair Housing Act, is broadly defined as "any building, structure, or portion thereof which is occupied ... or intended for occupancy ... and any vacant land which is offered for sale ... for the construction or location thereon of any such building." 42 U.S.C. § 3602(b). This broad definition includes a needy children's home, *United States v. Hughes Memorial Home*, 396 F.Supp. 544, 549 (W.D. Va.1975), an unoccupied house that a black family intended to occupy, *see United States v. Anzalone*, 555 F.2d 317, 318 (2d Cir.1977), *as modified on other grounds*, 560 F.2d 492 (2d Cir.1977), *cert. denied*, 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978), a house under construction for occupancy by a black family, *see United States v. White*, 788 F.2d 390, 391–92 (6th Cir. 1986), and a vacant lot offered for sale, *McHaney v. Spears*, 526 F.Supp. 566, 570 (W.D.Tenn.1981). In a case under 42 U.S.C. § 3617 (Fair Housing Act's civil provision for prevention of intimidation) an individual vandalized and firebombed a black person's automobile to intimidate him to move out of the community. *Stack-*

*house v. DeSitter,* 620 F.Supp. 208, 209 (N.D.Ill.1985). The court observed in *Stackhouse* that the Fair Housing Act's prohibitions against " 'otherwise mak[ing] unavailable or deny[ing] a dwelling' ... appear[ ] to be as broad a prohibition as Congress could have made, and all practices which have the effect of making dwellings unavailable on the basis of race are therefore unlawful." *Id.* at 211, n. 6 (quoting 42 U.S.C. § 3604(a)).

"Occupation," although not defined by the Act, has also been given a broad interpretation. For example, in *United States v. Johns,* 615 F.2d 672 (5th Cir.), *cert. denied,* 449 U.S. 829, 101 S.Ct. 95, 66 L.Ed.2d 33 (1980), the court rejected defendants' contention that section 3631 applied only when there was a specific, as compared to an incidental, motive to interfere with occupation. *Id.* at 675 (shots fired into home to discourage occupants from interracial living and dating). The Eleventh Circuit upheld a conviction under section 3631 where the defendants beat a woman who entertained black people in her home. *United States v. Wood,* 780 F.2d 955, 963 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 2920, 91 L.Ed.2d 549 (1986). The defendants in *Wood* claimed that a specific intent to interfere with occupation was necessary to state an offense under section 3631. The court rejected that approach. "Section 3631 was clearly designed to protect an individual's right to occupy a dwelling of one's choice free from racial pressure.... '[O]ccupation' includes more than mere physical presence within four walls; the term clearly incorporates the right to associate in one's home with members of another race." *Id.* at 961.

The terms "aiding" and "encouraging", found in sections 3631(c) and 3617, are not defined by the Act, but have been given their plain meaning. In *Wilkey v. Pyramid Construction Co.,* 619 F.Supp. 1453 (D.Conn.1985), the defendant claimed that section 3617 did not reach the activities of its part-time secretary who was dismissed for opposing defendant's policy of race discrimination. The court disagreed, finding that the secretary aided and encouraged prospective black tenants by receiving applications, showing, and renting apartments. *Id.* at 1455. We have allowed an action under section 3617 where apartment managers were fired for not following a policy of discouraging blacks and Mexican-Americans from renting apartments. *Smith v. Stechel,* 510 F.2d 1162 (9th Cir. 1975). We noted that section 3617 applies to "a situation where no discriminatory housing practice may have occurred at all because the would-be tenant has been discouraged from asserting his rights." *Id.* at 1164.

We believe these cases define the reach of section 3631(c). First, it is unnecessary for a dwelling to be in existence or occupied. A prospective dwelling is sufficient. Second, the occupation of a dwelling does not need to be permanent or associated with property rights. Finally, "aiding or encouraging" may occur without actually securing housing for a would-be tenant. Applying these principles here, we hold that the placement of minority children by the director of an adoption agency is a protected activity under section 3631(c) since the director is "aiding or encouraging" minorities in the occupancy of dwellings. We believe, as the district court stated, that "placement with a family necessarily requires placement in a dwelling." The relationship between an adoption agency and the occupancy of a dwelling is not "too remote." Construing this criminal provision narrowly yet allowing for the evident purpose of the statute, we conclude that the allegations of the information are within the reach of section 3631.

3. Constitutionality of Section 3631

██ Gilbert contends for the first time on appeal that section 3631 is unconstitutional. He argues that (1) prosecution under the Act violates his first amendment right to free speech; (2) the statute is facially vague; and (3) the statute is overbroad as applied. Such claims are attacks on the sufficiency of the information to charge an offense. *See United States v. Seuss,* 474 F.2d 385, 387, n. 2 (1st Cir.), *cert. denied,* 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973). The defense may be

raised for the first time on appeal. *Id.; Carlson v. United States,* 296 F.2d 909, 910 (9th Cir.1961).

a. Freedom of Speech

The first amendment requires that one be permitted freedom of expression and belief. *Dennis v. United States,* 341 U.S. 494, 508, 71 S.Ct. 857, 866–67, 95 L.Ed. 1137 (1951). Statutes which burden such freedoms "must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973).

■■■■ Gilbert first argues that his letter to the agency was intended as an expression of his belief and not as a form of intimidation. He denies sending the flyers and thus seeks to limit his constitutional challenge to the information only to the mailing of the letter. Such a division is improper. The issue in judging the sufficiency of the information is whether it adequately alleges the elements of an offense, not whether the government can prove its case. *United States v. Mussry,* 726 F.2d 1448, 1451 (9th Cir.), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *United States v. Buckley,* 689 F.2d 893, 897 (9th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). The allegations of the information are to be presumed true for purposes of determining the sufficiency of the charges. *Buckley,* 689 F.2d at 897.

■■■■ The government contends that Gilbert's mailing of the letter and flyers embodied serious threats and as such are not constitutionally protected expression. An illegal course of conduct is not protected by the first amendment merely because the conduct was in part carried out by language in contrast to direct action. *See Cox v. Louisiana,* 379 U.S. 536, 555, 85 S.Ct. 453, 464–65, 13 L.Ed.2d 471 (1965); *United States v. Daly,* 756 F.2d 1076, 1082 (5th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985). If conduct contains both speech and non-speech elements, and if Congress has the authority to regulate the non-speech conduct, incidental restrictions on freedom of speech are not constitutionally invalid. *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968); *United States v. Cooper,* 606 F.2d 96, 98 (5th Cir. 1979), *cert. denied,* 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980).

■■■■ Gilbert contends, however, that by virtue of expression alone he must defend against the charges in the information. He correctly identifies the element of intent specified in section 3631 as the determinative factor separating protected expression from unprotected criminal behavior. He also correctly notes that the delineation is imprecise. *See United States v. Howell,* 719 F.2d 1258, 1260 (5th Cir.1983) (line between protected and unprotected speech may be difficult to draw), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). Nevertheless, the statute's requirement of intent to intimidate serves to insulate the statute from unconstitutional application to protected speech. *See Watts v. United States,* 394 U.S. 705, 708, 89 S.Ct. 1399, 1401–02, 22 L.Ed.2d 664 (1969) (utterances of "political hyperbole" are not to be included within statutory prohibitions of speech).

■■■■ Whether any given form of written expression can supply the requisite intent requirement is a question for the trier of fact. *See United States v. Merrill,* 746 F.2d 458, 462 (9th Cir.1984) (whether expression is true threat is for trier of fact in all circumstances), *cert. denied,* 469 U.S. 1165, 105 S.Ct. 926, 83 L.Ed.2d 938 (1985); *United States v. Carrier,* 672 F.2d 300, 304 (2d Cir.) (defendant's intention in uttering words and the circumstances surrounding their use are issues of fact for the jury), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982). Gilbert's alleged threats of intimidation here include a threat to murder whites who aid blacks and other minorities. Certain types of expression which by their nature inflict injury or tend to incite an immediate breach of the peace are arguably unprotected. *Dennis,*

341 U.S. at 544, 71 S.Ct. at 885 (Frankfurter, J., concurring). The government bears the ultimate burden of proving that Gilbert's actions were taken with the requisite intent to place them into that category. *Watts*, 394 U.S. at 708, 89 S.Ct. at 1401–02. Thus it is a jury question whether actions and communications are clearly outside the ambit of first amendment protection. *See United States v. Mitchell*, 463 F.2d 187, 191 (8th Cir.1972) (reviewing jury instructions), *cert. denied*, 410 U.S. 969, 93 S.Ct. 1449, 35 L.Ed.2d 705 (1973).

#### b. Vagueness

As a matter of due process, no one may be required at the peril of loss of liberty to speculate as to the meaning of penal statutes. *United States v. Smith*, 795 F.2d 841, 847 n. 4 (9th Cir.1986) (citing *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939)). A statute may be void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes. *Schwartzmiller v. Gardner*, 752 F.2d 1341, 1345 (9th Cir.1984). The standards for permissible statutory vagueness are strict in the area of free expression. *NAACP v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337–38, 9 L.Ed.2d 405 (1963). A statute may be found to be unconstitutional if it prohibits privileged exercises of first amendment rights even if the defendant has not engaged in the privileged conduct. *Id.*

The legislation here specifically forbids certain action. No one "by force or threat of force" may injure, intimidate or interfere with anyone who is lawfully aiding or encouraging others in "occupying ... any dwelling." 42 U.S.C. § 3631. Even if this language could be said to lack specificity, that alone should not render it void. *See Cox*, 379 U.S. at 568, 85 S.Ct. at 482–83; *Christopher*, 700 F.2d at 1259. "Words inevitably contain germs of uncertainty." *Broadrick*, 413 U.S. at 608, 93 S.Ct. at 2914. Imprecision in penal legislation should be tolerated if the language can be said nevertheless to give fair notice to those who might violate it. *See Grayned v. City of Rockford*, 408 U.S. 104, 112, 92 S.Ct. 2294, 2301, 33 L.Ed.2d 222 (1972). Moreover, legislation which proscribes the use of force or the threat of force should not be found to be void for vagueness. *See United States v. Velasquez*, 772 F.2d 1348, 1357 (7th Cir.1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 1211, 89 L.Ed.2d 323 (1986). Such legislation does not prohibit threats generally and hence is not intended to exploit the natural ambiguity of such words as "threat" or "intimidate." See id. Section 3631 is not unconstitutionally vague.

#### c. Overbreadth

Even a clear and concise law may be overbroad if it prohibits constitutionally protected activity. *Christopher*, 700 F.2d at 1259. Overbroad statutes "may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798, 104 S.Ct. 2118, 2125, 80 L.Ed.2d 772 (1984); *ACORN v. City of Phoenix*, 798 F.2d 1260, 1272 (9th Cir.1986). If such a challenge is successful, the prosecution fails regardless of the nature of the defendant's own conduct. *Coates v. Cincinnati*, 402 U.S. 611, 616, 91 S.Ct. 1686, 1689, 29 L.Ed.2d 214 (1971); *Wurtz v. Risley*, 719 F.2d 1438, 1440 (9th Cir.1983).

Application of the overbreadth doctrine to preclude all enforcement of a statute is "strong medicine" to be employed "sparingly and only as a last resort." *Broadrick*, 413 U.S. at 613, 93 S.Ct. at 2916. Accordingly, the Court has delineated limitations upon the doctrine's application. In *Broadrick* the Court reasoned that the function of overbreadth adjudication "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws...." *Id.* at 615, 93 S.Ct. at 2917. Where conduct and not merely speech is regulated, the Court requires "that the overbreadth of a statute must not only be real, but substantial as well, judged in rela-

tion to the statute's plainly legitimate sweep." *Id.* Overbreadth scrutiny is less rigid when the questioned legislation regulates "conduct in the shadow of the First Amendment, but do[es] so in a neutral, noncensorial manner." *Id.* at 614, 93 S.Ct. at 2917.

Section 3631 on its face regulates conduct, although expressive speech may also be implicated. The possibility of the statute's reach into substantial, impermissive, protected activity appears remote. *See Stoianoff v. Montana,* 695 F.2d 1214, 1218 (9th Cir.1983) (to be overbroad a statute must reach a "substantial amount of constitutionally protected conduct"). When a statute may deter protected speech only to some unknown extent, we cannot justify invalidating the statute and thereby prohibit the government from regulating conduct within its power to proscribe. *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917–18.

There is no question that the proscription of force or threat of force is within the government's powers. *See Velasquez,* 772 F.2d at 1357. "[T]he statute's limited scope takes it out of the realm of social or political conflict where threats to engage in behavior that may be unlawful may nevertheless be part of the marketplace of ideas." *Id.* (interpreting statute punishing the making of a threat to do bodily harm to or to destroy or damage the property of a government informant). We conclude that section 3631's sweep is within constitutional bounds.

## B. Dismissal of Indictment With Prejudice

■ We review the district court's dismissal of the indictment with prejudice for an abuse of discretion. *United States v. Simmons,* 536 F.2d 827, 837–38 (9th Cir.), *cert. denied,* 429 U.S. 854, 97 S.Ct. 148, 50 L.Ed.2d 130 (1976). Rule 48(b) of the Federal Rules of Criminal Procedure provides that "if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment." A trial court has discretion under Rule 48(b) to dismiss an indictment with prejudice. *Id.* at 833–34. But, "such power should be utilized with

caution and only after a forewarning of the consequences." *Id.* at 834.

In *Simmons,* we found the requirement of forewarning was not met because the U.S. Attorney was not advised there would be a dismissal with prejudice. *Id.* at 837. We did not address or define the requirement of caution. *Id.* This requirement was later defined, however, in *United States v. Hattrup,* 763 F.2d 376, 377 (9th Cir.1985), where we reversed the dismissal of an indictment with prejudice because "the district court failed to exercise the requisite caution." Our decision was based on several factors, but "particularly the absence of prosecutorial misconduct and demonstrable prejudice or substantial evidence thereof." *Id.* at 378.

Here, the forewarning requirement was met more in form than in substance. The government requested time to consider the effect of the first dismissal before proceeding to trial on the following day. Counsel for the government explained that Department of Justice guidelines required him to consult with other offices before deciding how to proceed. The court responded that it would deny the continuance and that any dismissal of the indictment would be with prejudice. There is an obvious difficulty in meeting the forewarning requirement when dismissal occurs the same day that the warning is given. *Hattrup,* 763 F.2d at 377 ("compliance with the forewarning requirement of *Simmons* may have been somewhat difficult in this case, when the Government moved for a continuance on the very date set for trial").

The caution requirement, however, was clearly not met. The district court invoked "the harsh remedy of dismissal with prejudice" without a sufficient basis. *See Hattrup,* 763 F.2d at 378. It made no findings of prosecutorial misconduct or prejudice to the accused. The concerns stated were limited to calendar control and the defendant's general rights to a speedy trial. Although dismissal based on calendar control is normally without prejudice, it is within the trial court's discretion to dismiss with prejudice, but only after the requirements of forewarning and caution have been met. *Simmons,* 536 F.2d at

833–34 (quoting *United States v. Stoker*, 522 F.2d 576, 580 (10th Cir.1975)). Similarly, speedy trial concerns that do not rise to a constitutional level can be the basis for a dismissal with prejudice, but again, only after the *Simmons* requirements have been met. *Id.* at 834. Gilbert contends that the Speedy Trial Act would have been violated had a continuance been granted. Such a violation would have occurred only if the trial did not commence until the date originally scheduled assuming no further excludable time was granted. At the time of the dismissal, no violation of the Speedy Trial Act was imminent.

Gilbert cites *United States v. Towill*, 548 F.2d 1363, 1370 (9th Cir.1977), where we reasoned that "the trial court is in a better position than an appellate court to determine the equities" in applying the *Simmons* test. Although we affirmed the dismissal with prejudice in *Towill*, the district court there made explicit findings of prosecutorial misconduct and prejudice to the accused. *Towill*, 548 F.2d at 1369–70. In the absence of such findings, we conclude it is necessary to reverse the dismissal of the indictment.

REVERSED and REMANDED.