**Donald LESTER, Petitioner,**

v.

**Harold FALK, Director, Department of Corrections, Respondent.**

**Civ. No. 89–00736 ACK.**

United States District Court, D. Hawaii.

June 28, 1990.

Donald Lester, Halawa Medium Security Facility, Aiea, Hawaii, Reginald Minn, Honolulu, Hawaii, for petitioner.

Keith Kaneshiro, Patricia A. Loo, Honolulu, Hawaii, for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

KAY, District Judge.

### INTRODUCTION

Petitioner Donald Lester files his objections to the Magistrate's Report and Recommendation ("R & R") denying Lester's Petition for Writ of Habeas Corpus. For the following reasons the Magistrate's R & R is adopted with modifications as to points one and three.

### FACTUAL BACKGROUND

Petitioner was convicted on March 1, 1979 for the offense of Murder in violation of section 707–701 and was sentenced un-

der the Murder by Hired Killer statute (706–606(a)(iii)) of the Hawaii Revised Statutes. Petitioner filed an appeal of his conviction to the Hawaii Supreme Court and also raised issues now raised in the instant Writ of Habeas Corpus. His conviction was affirmed by the Hawaii Supreme Court in *State v. Lester*, 64 Haw. 659, 649 P.2d 346 (1982).

In his Petition, Lester raises three points of contention:

1. The Murder by Hire statute is unconstitutionally vague,

2. The use of conditional immunity agreements and conditional plea agreements to obtain testimony violated Lester's due process rights, and

3. Lester was denied the right to cross-examination of a State witness regarding specific testimony.

Magistrate Tokairin considered and denied the above arguments in the R & R. Petitioner now objects to the R & R's findings only as to points one and three.[1]

## DISCUSSION

### A. VAGUENESS

Petitioner first objects to the Magistrate's finding that the Hawaii Revised Statutes' Murder for Hire statute was not unconstitutionally vague. Petitioner initially asserts that the Hawaii Supreme Court did not "define" the phrase "to hire to kill" as the Magistrate concluded. Petitioner is correct in his assertion. At the trial level in the state proceedings the court defined "to hire to kill" as "to engage the services of a person or persons to kill for remuneration." *State v. Lester, supra*, 64 Haw. at 670, 649 P.2d 346. The Hawaii Supreme Court in affirming Petitioner's conviction found no reversible error in including this definition in the instructions. *Id.* The Supreme Court of Hawaii noted that "there is

no criminal offense of murder for hire." *Id.* The court noting that Lester was charged with murder further stated, however, that the phrase " 'by a hired killer' was not essential to the charge nor was it an element of the offense, but its inclusion can hardly be fatal." [2] *Id.*

The Magistrate further found that "[t]his federal court will not set aside reasonable interpretations by a state of its own laws." R & R at 2. The R & R also stated that the writ of habeas corpus "is unavailable for alleged error in the interpretation or application of state law...." *Id.* Essentially, the Magistrate determined that "Petitioner's claim is nothing more than a violation of state law." *Id.*

■ Petitioner argues that his claim is much more than a mere "violation of state law," but instead rises to the level of the deprivation of his right to due process under the Fourteenth Amendment to the United States Constitution. A state prisoner can obtain relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, in order to obtain habeas corpus relief the prisoner must allege a deprivation of a federal right. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982).

■ Petitioner is correct in his argument that he alleges a deprivation of a federal right entitling him to federal habeas corpus review. In *Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974), the United States Supreme Court found a state criminal flag desecration statute vague and reversed the conviction on federal habeas corpus grounds. *See also Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (state statute vague; conviction reversed on federal habeas corpus

---

**1.** For the reasons set forth in the Magistrate's R & R this Court adopts the analysis and result reached by the Magistrate on the second issue concerning the use of conditional immunity agreements.

**2.** HRS § 706–606(a)(iii) is a sentencing statute only. If a person is found to have murdered a

person by hired killer that person is subject to life imprisonment *without* the possibility of parole. If the person did not commit the offense by hired killer, but is otherwise guilty of murder then he is subject to life imprisonment *with* the possibility of parole.

grounds). Thus, Petitioner has alleged more than a violation of state law.

It must now be determined whether the Murder for Hire sentencing statute is unconstitutionally vague. Generally, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted); *see also United States v. Murphy*, 809 F.2d 1427, 1431 (9th Cir.1987). The United States Supreme Court in *Kolender* further stated that "[a]lthough the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of the vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" 461 U.S. at 357, 103 S.Ct. at 1858, *citing, Smith v. Goguen, supra*, 415 U.S. at 574, 94 S.Ct. at 1248.

It is firmly established that the standards for permissible statutory vagueness are more strict in the area of free expression than in other areas. *United States v. Gilbert*, 813 F.2d 1523, 1530 (9th Cir.), *cert. denied*, 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987), *citing, NAACP v. Button*, 371 U.S. 415, 432, 83 S.Ct. 328, 337, 9 L.Ed.2d 405 (1963). This case does not involve any rights pertaining to free expression under the First Amendment. Therefore, the most strict analysis does not apply. It is equally well-established, however, that the standards for specificity and definiteness must be more exacting for criminal statutes than for civil statutes. *Winters v. New York*, 333 U.S. 507, 515, 68 S.Ct. 665, 670, 92 L.Ed. 840 (1948). Accordingly, this Court applies the standards relating to criminal cases not involving the rights of free expression.

Petitioner concedes that he knew in 1978 that it was illegal for one person to hire another person to commit murder. Al-though Petitioner makes such an important concession (which would seem to end the inquiry) he further states that this point is not relevant to the instant issue. Instead, and to large degree contradictory to his above-stated position, Petitioner argues that the definition of the term "hire" was crucial to his defense of alcoholism. As such, it appears that Petitioner's argument as to the definition of "hire" is merely a state issue relating to the wording of a particular jury instruction and is not an argument that he was denied due process of law. On the other hand, it is conceivable that Petitioner submits the argument that the word "hire" as used in a penal statute is unconstitutionally vague.

Due to the uncertainty of Petitioner's argument the most prudent approach for habeas corpus review purposes is to analyze the Hawaii statute for vagueness. The Ninth Circuit has held that even if certain language could be said to lack specificity, that alone should not render it void. *Gilbert*, 813 F.2d at 1530. " 'Words inevitably contain germs of uncertainty.' " *Id., quoting, Broadrick v. Oklahoma*, 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973). Moreover, "[i]mprecision in penal legislation should be tolerated if the language can be said nevertheless to give fair notice to those who might violate it." *Gilbert*, 813 F.2d at 1530.

In his Petition, Lester asserts that the word "hire" encompasses no less than three varied meanings. Petitioner further argues that since the legislative history is silent and since there had previously been no prior constructions of the statute by the Hawaii courts prior to his conviction, the Murder for Hire statute "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Petitioner's objections at 8 referring to *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). This Court disagrees.

■ Petitioner's three proffered meanings of the term "hire" are close cousins

with relatively minor differences. First, Petitioner claims that "hire" is used in the contract sense. Second, Petitioner asserts that "hire" can be defined as " 'to engage the personal services for a fixed sum.' " Petition at 22, *citing*, Webster's Third New Int'l Dictionary of the English Language at 1072 (Unabridged 1969). Petitioner's third definition of "hire" "embraces the concept of actual payment, not merely a promise to pay a sum at some future date." Petition at 23. Although, Petitioner did not receive the instruction he may have desired it cannot be said that the word "hire" is unconstitutionally vague. The word "hire" used in HRS § 706–606(a)(iii) at the time of Petitioner's conviction was sufficiently definite such that ordinary people could understand what conduct is prohibited and is also defined in such a manner that does not encourage arbitrary and discriminatory enforcement.

■ Petitioner's contention that a defendant in a subsequent Murder for Hire case received a more detailed definition is irrelevant to the consideration of whether the statute is unconstitutionally vague as applied to Petitioner. This argument goes only to the language employed in the jury instruction which is a state law question and does not concern vagueness. The Hawaii Supreme Court considered Petitioner's objections to the instruction and rejected them. Just because a different or more detailed instruction is given in another case does not mean that the statute is arbitrarily applied. Trial courts frequently differ as to the proper definition of a certain word.

■ To adopt Petitioner's argument would render many common terms "vague" in the constitutional sense. A legislature's decision not to define a word in a statute is exclusively a legislative function. It is the judicial function to apply the facts of a particular case to the statutory language. Thus, the possibility that a term may have a slightly different meaning in a different context does not render the term unconstitutionally vague. Although it may be the better practice to give statutory terms a definition the legislature's decision

not to do so does not render such statutes unconstitutionally vague. In this case, the term "hire" under the Hawaii sentencing statute is sufficiently understandable such that an ordinary person would know what conduct is prohibited. Accordingly, this Court rejects Petitioner's argument that HRS § 706–606 is unconstitutionally vague.

## B. DENIAL OF RIGHT TO CROSS-EXAMINATION

Petitioner next objects to the R & R rejecting his claim that the trial court violated his Fourteenth Amendment right to due process, his Sixth Amendment right to cross-examination, and his Sixth Amendment right to compulsory process. Petitioner asserts that he was denied the right to *effectively* cross-examine a key prosecution witness, Elizabeth Tuttle, who, according to Petitioner, "was the driving force behind the murder and that she manipulated Petitioner (and others) to achieve her desired result." Petitioner's objections at 11. Petitioner also claims that he was denied the right to introduce independent evidence of Tuttle's alleged admission to the murder.

Petitioner states that the Magistrate erred in concluding that the wide latitude of cross-examination allowed by the trial judge was sufficient to satisfy Petitioner's constitutional right. Petitioner asserts that the relevant issue is not the extent of cross-examination allowed but the cross-examination which was not allowed. The excerpts of the trial transcript cited by Petitioner in his Petition reveal that Petitioner proffered the alleged admission at which time a bench conference was held. Petitioner made an offer of proof and the prosecutor objected on foundation grounds. This objection was sustained. A further offer of proof was made prior to the presentation of the defense's case and the trial court again ruled against Petitioner. Petitioner was allowed to ask the witness whether she had made the admission. The witness denied making the statement. The court allowed no further questions on the subject. Essentially, Petitioner asks this

Court to substitute its judgment for that of the trial judge presiding at the trial. From the record above, it is clear that the trial judge considered Petitioner's offers and rejected them.

■ The right of a defendant to confront witnesses is not limitless. *United States v. Williams*, 877 F.2d 516, 519 (7th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 180, 107 L.Ed.2d 136 (1989), *citing, Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). Instead, the Sixth Amendment guarantees a defendant an opportunity for effective cross-examination. *Id.* In other words, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Fensterer*, 474 U.S. at 20, 106 S.Ct. at 294 (emphasis original). Also, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination...." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). Thus, cross-examination must necessarily be limited by the Rules of Evidence in order to ensure a fair trial.

The trial record reflects that the trial judge permitted wide latitude in cross examination, including the area in which Petitioner complains.[3] Petitioner cites the Supreme Court decision in *Davis v. Alaska* as support for the general theory behind the right of cross-examination:

Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness.

415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974).

In *United States v. Pritchett*, 699 F.2d 317, 321 (6th Cir.1983), the court held that the district court committed reversible error in Pritchett's narcotics distribution trial where it refused to permit cross-examination concerning the existence of other sources of supply for two other dealers, Carper and Eaves. According to the court, this line of questioning was critical based on Pritchett's basic defense that at no time had he ever distributed drugs to Carper and Eaves. *Id. Davis* and *Pritchett*, however, do not support a finding in this case that Petitioner was denied his Sixth Amendment right to confrontation of witnesses.

The Ninth Circuit has acknowledged:

While the scope of cross-examination is within the discretion of the trial judge, this discretionary authority to limit cross-examination comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment.

*Chipman v. Mercer*, 628 F.2d 528, 530 (9th Cir.1980), *overruled on other grounds, Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), *quoting, United States v. Elliott*, 571 F.2d 880, 908 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978) (citation omitted).

■ Confrontation questions must be resolved on a case-by-case basis based on examination of all circumstances and evidence. *Chipman*, 628 F.2d at 530 (citation omitted). Judge (now Justice) Kennedy writing for the *Chipman* court stated:

---

**3.** The cross-examination of Tuttle was extensive on both credibility issues and the substantive issues. For instance, Petitioner cross-examined Tuttle concerning her use of medication, Transcript Vol. II at 3, her sexual relationship with Petitioner, *id.* at 8, her reaction to the news that Michelle Lester had been killed ("the bitch got what she deserved"), *id.* at 7, and her grant of immunity and other work with the police in the investigation, *id.* at 20 and 28. Also, cross-examination was permitted concerning Tuttle's suggestion to Petitioner to "get rid of Michelle," *id.* at 11, that Tuttle had threatened to "beat [Michelle's] hide in," *id.*, and that she wanted Michelle Lester killed, *id.* at 33.

Neither the confrontation clause nor the case-by-case approach to resolving confrontation questions should be interpreted to permit persons convicted in state proceedings to use putative sixth and fourteenth amendment claims as a vehicle for obtaining federal review of evidentiary questions properly left to resolution by the state courts. Two limiting principles can be identified, and others may be elaborated in appropriate cases. First, the confrontation clause applies to the essentials of cross-examination, not to all the details of its implementation. The provision should not become the source of a vast and precise body of constitutional common law controlling the particulars of cross-examination. From this follows a second, related concept: trial courts have broad discretion concerning the proper extent of cross-examination, to which appellate courts owe deference.

*Id.* at 530–31. (Citations omitted).

 A review of the trial transcript reveals that Petitioner received an opportunity to effectively cross-examine Tuttle. Moreover, it appears that Tuttle was allowed to respond to the question regarding whether she yelled out that Michelle Lester's murderer (presumably referring to herself) is moving. On re-cross-examination, Petitioner's counsel asked Tuttle:

"Q. Do you recall screaming at Jeannie, 'Michelle Lester's murderer is moving'?

A. No, I didn't."

Transcript Vol. II at 80.

After an objection by the prosecutor which was sustained by the court the witness stated "I made reference—" but was cut off by the prosecutor. At that point, no further questions were asked. Accordingly, it appears as though Petitioner's counsel, in large part, was able to ask the question he desired and received an answer. There were no motions to strike or motions to disregard. Therefore, the jury presumably received the benefit of Tuttle's answer. Thus, Petitioner's claim that his Confrontation Clause rights were violated is without merit.

Petitioner also objects to the Magistrate's finding that his Sixth Amendment right of Compulsory Process was not violated. Petitioner argues that this constitutional right was violated when the trial court refused to admit Tuttle's "admission" that Michelle Lester's murderer is moving (presumably referring to Tuttle). This argument has a fundamental flaw, however. As can be seen from the excerpts of the cross-examination above Tuttle denied making the statement or "admission" that Michelle Lester's murderer is moving. Petitioner offers no evidence here, and there appears to be none in the record, that Tuttle ever admitted making that statement. Thus, Petitioner's claims of the statement's admissibility is immaterial since Tuttle denied making the statement. Therefore, this claim is without merit.

## ORDER

Accordingly, it is hereby ORDERED that the Magistrate's Report and Recommendation be adopted as modified in accordance with the discussion above.