**COUNCIL FOR LIFE COALITION, Jim Harnsberger, Kathy Harnsberger, Jim Baxter, Sammy Wilson, Eric Camillo, and Barbara Blackledge, Plaintiffs,**

v.

**Hon. Janet RENO, Attorney General of the United States of America, Defendant.**

**No. 94–0843–IEG (CM).**

United States District Court, S.D. California.

July 6, 1994.

Frank W. Hunger, Asst. Atty. Gen., Alan D. Bersin, U.S. Atty., Kendall Newman, Asst. U.S. Atty., Neil H. Koslowe, Sp. Litigation Counsel, Civil Div. Dept. of Justice, Washington, DC, for defendant.

Peter D. Lepiscopo, Law Offices of Peter D. Lepiscopo, San Diego, CA, for plaintiffs.

Jordan C. Budd, ACLU Foundation of San Diego and Imperial Counties, San Diego, CA, Margaret C. Crosby, ACLU Foundation of Northern California, San Francisco, CA, Catherine Weiss, Louise Melling, Karen Leiter, Reproductive Freedom Project, American Civil Liberties Union Foundation, Steven R. Shapiro, American Civil Liberties Union Foundation, New York City, for proposed amici curiae.

Cynthia Thornton, Jane Hahn, Hovey Kirby & Thornton, San Diego, CA, Martha F. Davis, Deborah A. Ellis, NOW Legal Defense & Educ. Fund, Simon Heller, Cather-

ine Albisa, The Center for Reproductive Law & Policy, New York City, for proposed intervenors.

## ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION

GONZALEZ, District Judge.

The following motions came on regularly for hearing on June 29, 1994, at 2:00 p.m., in Courtroom 11 of the above-entitled Court, the Honorable Irma E. Gonzalez presiding: 1) Defendant's Motion to Dismiss; 2) Plaintiffs' Motion for a Preliminary Injunction; 3) Proposed Intervenors' Motion to Intervene; and 4) Proposed Amici Curiae's Motion for Leave to file a Brief Amici Curiae in support of defendant's motion to dismiss.

At the hearing on the foregoing motions, there being no opposition and for good cause shown, the Court **GRANTED** the Proposed Intervenors' motion to intervene as defendants in this action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. The Court also **GRANTED** the Proposed Amici Curiae's motion for leave to file a brief amici curiae in support of defendant's motion to dismiss. The following order thus addresses the defendant's motion to dismiss and the plaintiffs' motion for a preliminary injunction.

### I.

This is an action for declaratory and injunctive relief seeking to enjoin the enforcement of The Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248 ("FACE") that President Clinton signed into law on May 26, 1994. The critical portion of FACE at issue here provides that whoever "by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services" shall be subject to certain criminal penalties and civil remedies. (FACE, § 3).

FACE specifically defines several of its key terms. (*Id.*). The term "interfere with" means "to restrict a person's freedom of movement" (*Id.*). The term "intimidate" means "to place a person in reasonable apprehension of bodily harm to him- or herself or to another" (*Id.*). The term "physical obstruction" means "rendering impassable ingress to or egress from a facility that provides reproductive health services ... or rendering passage to or from such a facility ... unreasonably difficult or hazardous" (*Id.*). The term "reproductive health services" means "reproductive health services provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy" (*Id.*).

The stated purpose of FACE is to "protect and promote the public safety and health and activities affecting interstate commerce by establishing Federal criminal penalties and civil remedies for certain violent, threatening, obstructive and destructive conduct that is intended to injure, intimidate or interfere with persons seeking to obtain or provide reproductive health services." (FACE, § 2). In enacting FACE, which is enforceable criminally and civilly by the Attorney General, and civilly by State attorneys general and individuals who are victimized by the prohibited conduct, Congress compiled and responded to a substantial legislative record of the use of violence, threats of violence, mass blockades, invasions of abortion clinics, and destruction of medical facilities by bombings, arson, and acid and gas attacks. *See, e.g.,* S.Rep. No. 117, 103rd Cong., 1st Sess. 3 (1993) ("Senate Report") 1994 U.S.Code Cong. & Admin.News ——. Congress determined that existing laws were inadequate to stop this violence, and that federal legislation was necessary and appropriate.

Plaintiff Council for Life Coalition is an unincorporated California association whose members are opposed to abortion on theological, moral and other grounds. Individual plaintiffs Jim Harnsberger, Kathy Harnsberger, Jim Baxter, Sammy Wilson, Eric Camillo and Barbara Blackledge (collectively the

"individual plaintiffs") are all citizens of the United States residing in San Diego County who are opposed to abortion on theological, moral and other grounds. The individual plaintiffs allege that they have peaceably demonstrated, prayed, distributed materials and "sidewalk counseled" in the proximity of abortion clinics.

Plaintiffs seek a preliminary injunction against the enforcement of FACE on a variety of constitutional and statutory grounds. Defendant Janet Reno, Attorney General of the United States of America opposes plaintiffs' application for a preliminary injunction and moves to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. In the motion to dismiss, defendant argues that this action is non-justiciable and that, in any case, plaintiffs have failed to state a claim upon which relief can be granted.

At the hearing on these motions, defendant conceded that, in light of the first amended complaint and accompanying supplemental declarations of the individual plaintiffs filed after the motion to dismiss,[1] there no longer is an issue regarding the justiciability of this action. Accordingly, the Court addresses defendant's alternative argument that plaintiffs have failed to state a claim upon which relief can be granted.

## II.

Plaintiffs seek to enjoin the enforcement of FACE on the ground that it abridges freedom of expression and association protected by the first amendment, violates the establishment clause and the free exercise clause of the first amendment, violates the Religious Freedom Restoration Act of 1993, and that Congress had no authority to pass FACE either pursuant to Section 5 of the fourteenth amendment or the Commerce Clause. The Court first addresses plaintiffs' core claim that FACE abridges freedom of expression.

### A. *Freedom of Expression*

■ The fundamental flaw underlying plaintiffs' arguments that FACE violates the free exercise clause of the first amendment is their assertion that FACE applies to protected expression. In fact, by its terms, FACE proscribes only conduct—"force," the "threat of force," and "physical obstruction," which is used intentionally to injure, intimidate, or interfere with persons because they seek to obtain or provide reproductive health services. The Court rejects as insupportable any suggestion that shootings, arson, death threats, vandalism, or other violent and destructive acts addressed by FACE are protected by the first amendment merely because those engaged in such conduct " 'intend[ ] thereby to express an idea.' " *Wisconsin v. Mitchell,* —— U.S. ——, ——, 113 S.Ct. 2194, 2199, 124 L.Ed.2d 436 (1993) (quoting *United States v. O'Brien,* 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968)). "[V]iolence or other types of potentially expressive activities that produce special harms distinct from their communicative impact ... are entitled to no constitutional protection." *Roberts v. United States Jaycees,* 468 U.S. 609, 628, 104 S.Ct. 3244, 3255, 82 L.Ed.2d 462 (1984); *see also NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 916,

---

1. In their supplemental declarations, the individual plaintiffs state that they:

wish and intend to engage in the activities prohibited by Section 248(a)(1) of FACE, which include, but are not limited to, shouting and/or gesturing, and communicating (either orally and/or with signs and/or by my demeanor and/or expression) *threats of force in order to intimidate or interfere with individuals who have or are about to obtain or provide reproductive health services;* standing and/or marching in single file on public sidewalks that are in front of entrances to facilities that provide reproductive health services; and demonstrating, praying, distributing materials, carrying signs, sidewalk counseling, and exercising my rights to freedom of speech and exercise of religion.

*See, e.g.,* Supplemental Declaration of Jim Harnsberger Dated June 22, 1994 at ¶2 (emphasis added).

In addition, according to the supplemental declaration of Sammy Wilson, the San Diego County Sheriff's department has indicated that if he continues with his "abortion protest activities" and if he "stood or marched on the public sidewalk" in front of a local abortion clinic with a "sign protesting" he would be arrested under FACE after first being warned to cease and desist.

*See* Supplemental Declaration of Jim Harnsberger Dated June 22, 1994 at ¶4.

102 S.Ct. 3409, 3427, 73 L.Ed.2d 1215 (1982). Thus, like the statute that was upheld on first amendment grounds in *Wisconsin v. Mitchell,* FACE is aimed at conduct, not expression.

Plaintiffs attempt to argue that FACE penalizes "anyone who 'injures' anyone involved in the abortion process," and that because their demonstrations, prayers, distribution of materials, and sidewalk-counselling may inflict emotional and psychological "injuries," these activities are proscribed by FACE. (Memorandum of Points and Authorities in Support of Plaintiff's Application for Preliminary Injunction at pp. 8–11) ("P. Brief"). However, plaintiffs misread the statute. FACE does not apply to "anyone who 'injures' anyone involved in the abortion process." Instead, FACE criminalizes the use of "force" the "threat of force" and "physical obstruction" which are acts that are outside the scope of the first amendment's protections. Thus, those peaceable activities engaged in by plaintiffs that are not accompanied by the use of force, the threat of force, or physical obstruction, are not proscribed by FACE.

Plaintiffs further contend that FACE imposes content-based and viewpoint-based restrictions on protected expression because it applies only to conduct intended to injure, intimidate, or interfere with a person who seeks to obtain or provide reproductive health services, and not to conduct intended to injure, intimidate, or interfere with a person for any other reason. They argue that FACE is unconstitutional because it singles out for special punishment acts committed in the course of anti-abortion protests.

However, nothing in the plain words of the statute supports plaintiffs' arguments here. FACE applies to "[w]hoever" engages in the prohibited conduct, with the requisite intent to injure, intimidate or interfere with "any person" who is entering a facility to obtain reproductive health services or providing such services. Moreover, the broad statutory definition of "reproductive health services" to include "counselling or referral services relating to the human reproductive system" encompasses more than just abortion clinics.

Thus, although the statute is subject-specific, it is viewpoint neutral.

■ The fact that FACE singles out for punishment violence at reproductive health facilities or against those who provide and obtain abortion services does not render the statute discriminatory on the basis of content. The key inquiry in determining whether a statute is content-neutral is "whether the government has adopted a regulation of speech 'without reference to the content of the regulated speech.' " *Madsen v. Women's Health Center, Inc.,* —— U.S. ——, ——, 114 S.Ct. 2516, 2523, 129 L.Ed.2d 593 (1994) (*quoting Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661 (1989)). In making this determination, the threshold consideration is the government's purpose in enacting the legislation. *Id.*

Here, it is evident from the legislative record that the decision of Congress to prohibit violent conduct at abortion facilities or against those who provide and seek abortion services reflects Congress' concern over the severe impact of that violence, rather than a desire to curb any anti-abortion message some people wish to convey. Thus, as the Supreme Court held in *Wisconsin v. Mitchell,* the State's desire to redress particular harms "provides an adequate explanation for the particular statute over and above mere disagreement with the offenders' beliefs or biases.". —— U.S. at ——, 113 S.Ct. at 2201.

In addition, FACE's intent element does not restrict any type of message and, like the motive element under the Wisconsin statute upheld by the U.S. Supreme Court in *Wisconsin v. Mitchell,* it "plays the same role under [FACE] as it does under federal and state antidiscrimination laws, which [the Supreme Court has] previously upheld against constitutional challenge." —— U.S. at ——, 113 S.Ct. at 2200. *E.g., Roberts v. United States Jaycees,* 468 U.S. at 628, 104 S.Ct. at 3255.

Much of plaintiffs' first amendment challenge to FACE is directed toward FACE's prohibition against the "threat of force" to intimidate or interfere with access to reproductive health services. However, in this regard, the Court notes that FACE is similar

to numerous criminal statutes that prohibit intimidating or interfering with a person engaged in an activity of some federal interest. *E.g.,* 18 U.S.C. § 112(b) (making it unlawful to "intimidate[ ], coerce[ ], threaten[ ], or harass[ ] a foreign official ... in the performance of his duties"); 18 U.S.C. § 245(b) (providing that one who "by force or threat of force willfully injures, intimidates or interferes ·with, or attempts to injure, intimidate or interfere with—any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from [exercising certain designated rights]" violates the law); 18 U.S.C. § 372 (making it unlawful to "conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office"); 18 U.S.C. § 871(a) (criminalizing threats of violence made against the President or Vice President); 26 U.S.C. § 7212(a) (prohibiting attempts to interfere with internal revenue laws by one who "corruptly or by force or threats of force (including any threatening letter or communication)" endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity).

Despite the ancillary impact that these statutes may have on a defendant's speech or expressive conduct, courts have consistently upheld such statutes against first amendment challenge. *E.g., Watts v. United States,* 394 U.S. 705, 707–08, 89 S.Ct. 1399, 1401–02, 22 L.Ed.2d 664 (1969) (finding 18 U.S.C. § 871(a) constitutional on its face and distinguishing "a threat ... from what is constitutionally protected speech").

As the Supreme Court held in *R.A.V. v. St. Paul,* —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), such laws do not violate the first amendment, even though a defendant may be expressing a message while engaged in the proscribed conduct, because the "government [has] not target[ed] conduct on the basis of its expressive content." *Id.,* 112 S.Ct. at 2546–47. Persons who interfere with access to reproductive health services "are not shielded from regulation merely because they express a[n] ... idea or philosophy." *Id.,* ˙112 S.Ct. at 2547. Similarly, as the Ninth Circuit observed in *United States*

*v. Gilbert,* 813 F.2d 1523 (9th Cir.), *cert. denied,* 484 U.S. 860, 108 S.Ct. 173, 98 L.Ed.2d 127 (1987):

> If conduct contains both speech and non-speech elements, and if Congress has the authority to regulate the non-speech conduct, incidental restrictions on freedom of speech are not constitutionally invalid.

813 F.2d at 1529.

Plaintiffs rely heavily on *R.A.V. v. St. Paul,* —— U.S. ——, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) which invalidated a city ordinance that explicitly barred any "symbol," "appellation," or "graffiti" that expressed hostility based on race, color, creed, or gender. However, as the U.S. Supreme Court observed in *Wisconsin,* there is a distinction between invalid laws explicitly directed at protected expression, such as the city ordinance reviewed in *R.A.V.,* and valid laws aimed at unprotected conduct as is the case here. Thus, the Court held, "whereas the ordinance struck down in *R.A.V.* was explicitly directed at expression (i.e., 'speech' or 'messages') [the Wisconsin statute] is aimed at conduct unprotected by the First Amendment." —— U.S. at ——, 113 S.Ct. at 2201 (citations omitted).

■ Plaintiffs further argue that FACE is overbroad because it reaches peaceable and constitutionally-protected activities in which they engage to dissuade women from having abortions. Plaintiffs contend that such activities conceivably might cause psychological injury to these women, and therefore be proscribed under FACE. Plaintiffs further allege that FACE is unconstitutionally "vague" and fails to give them fair notice of whether it prohibits the conduct they contemplate.

■ In a facial challenge such as here, a law is deemed "overbroad" only where it reaches a "'substantial amount of constitutionally protected conduct.'" *Houston v. Hill,* 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982)). This requires the court to find either that "'every application of the statute create[s] an impermissible risk of

suppression of ideas'" or "'a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court.'" *New York State Club Association v. New York*, 487 U.S. 1, 11, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1988) (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798, 801, 104 S.Ct. 2118, 2125, 2126, 80 L.Ed.2d 772 (1984)). Plaintiffs thus must demonstrate from the text of FACE and from actual fact that a substantial number of instances exist in which FACE cannot be applied constitutionally. *Id.*, 487 U.S. at 14, 108 S.Ct. at 2234. Absent such a showing, whatever overbreadth may exist can be cured through case-by-case analysis of the fact situations to which FACE's prohibitions may not be applied. *Id.*

Plaintiffs contend that a "plausible reading" of several FACE provisions "is that they may be violated by the very things pro-life protesters and counsellors try to do every day on the streets and sidewalks outside clinics," and that these provisions have an "impermissible chilling effect" upon the exercise of first amendment rights. (P. Brief at pp. 19–20).

■ Here, the Court concludes that plaintiffs have failed to carry their burden of demonstrating that FACE reaches a substantial amount of protected conduct. FACE does not apply to a substantial amount of protected conduct in that by its terms, it is directed at unprotected conduct, and not speech, and plaintiffs have failed to cite sufficient factual scenarios which convince the Court that FACE could potentially reach protected conduct. Where, as here, "conduct and not merely speech is involved ... the overbreadth ... must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). *E.g.*, *Cameron v. Johnson*, 390 U.S. 611, 617, 88 S.Ct. 1335, 1339, 20 L.Ed.2d 182 (1968) (rejecting similar overbreadth challenge to statute that like FACE, prohibits obstruction of access to specified facilities).

■ The Court also finds that FACE is not unconstitutionally vague. In order to be unconstitutionally vague, the statute must be "impermissibly vague in all of its applications." *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. at 499, 102 S.Ct. at 1193. A statute is unconstitutionally vague only if people "'of common intelligence must necessarily guess at its meaning.'" *Hynes v. Oradell*, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)).

Here, not only does FACE include specific definitions for such key terms as "intimidate," "interfere," and "physical obstruction," most of the operative words come from other statutes which the U.S. Supreme Court and other courts have construed and found not unconstitutionally vague. Thus, for example, in *Cameron v. Johnson*, the Court held that a state statute prohibiting "picketing or mass demonstrations in such a manner as to obstruct or unreasonably interfere with free ingress or egress" was not unconstitutionally vague. 390 U.S. at 612 n. 1, 616, 88 S.Ct. at 1336 n. 1, 1338; *see also Grayned v. Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

Similarly, in *United States v. Gilbert*, the Ninth Circuit held that the Federal Fair Housing Act's prohibition against the use of "force or threat of force" to injure, intimidate or interfere with anyone who is lawfully aiding or encouraging others in "occupying ... any dwelling" was not unconstitutionally vague. 813 F.2d at 1530. Indeed, the Ninth Circuit observed even more broadly that "legislation which proscribes the use of force or the threat of force should not be found to be void for vagueness." *Id.*

■ Finally, plaintiffs contend that FACE's provision allowing the recovery in a civil action against violators of $5,000 in statutory damages is unconstitutional under *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), because the damages may be assessed against protected conduct. However, not only has the Court determined that FACE does not apply to protected conduct, plaintiffs' argument here also fails because it is wholly speculative and is more properly

raised in the context of an actual dispute in which a plaintiff attempts to invoke this provision in connection with particular conduct.[2]

## B. *Free Exercise Clause and Religious Freedom Restoration Act*

■■■· Plaintiffs argue that FACE violates their rights under the free exercise clause of the first amendment and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, et seq.

■■■ A law that is neutral toward religion and is generally applicable does not offend the free exercise clause, even if it has an incidental effect on religious practice. *See Church of the Lukumi Babalu Aye, Inc. v. Hialeah,* —— U.S. ——, ——, 113 S.Ct. 2217, 2226, 124 L.Ed.2d 472 (1993). The Court finds that plaintiffs' strained attempts to cast FACE as a law that is not neutral towards religion are unavailing. Not only does the text of FACE itself refute any such suggestion, there is nothing in FACE's legislative history that supports the conclusion that Congress enacted the statute for an impermissible religious purpose. The statute prohibits certain conduct regardless of whether religious conviction motivated the actor, and it neither favors certain religions over others nor favors no religion over religion.

■■■ The Religious Freedom Restoration Act provides in pertinent part:

> Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—1) is in furtherance of a compelling governmental interest and 2) is the least restrictive means of furthering that compelling governmental interest.

As a threshold matter as discussed above, plaintiffs have failed to demonstrate that FACE substantially burdens any person's exercise of religion. Plaintiffs do not seriously argue that their exercise of religion entails the use of force or threats of force. Instead, they are primarily concerned that they will be prevented from engaging in peaceful religious activities, such as prayer and attempts to dissuade individuals, on religious grounds, from seeking abortions. It appears that plaintiffs believe that these activities will be substantially burdened by the prohibition of physical obstruction. However, plaintiffs do not contend that it is part of their exercise of religion to make ingress to or egress from a facility impossible, unreasonably difficult, or hazardous, which is what is prohibited by the statute.

Even assuming that FACE substantially burdened plaintiffs' exercise of religion, application of that burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling interest. Congress unquestionably has a compelling interest in prohibiting the use of force and threats of force and physical obstruction of facilities providing reproductive health services. As plaintiffs admit, such conduct is already unlawful under state and local laws. In addition, the evidence before Congress established that such obstruction has seriously impeded the access of women to important health services, including the constitutionally protected right to have an abortion. Congress found that physical obstruction has imposed serious medical risks on women and has an effect on interstate commerce.

Moreover, FACE is a carefully drawn statute that addresses the precise interest that Congress identified and nothing more. It addresses a narrow and carefully proscribed set of actions that contribute directly to the compelling problems for which it sought to provide a remedy. Its prohibitions are limited to the use of force, threats of force, and physical obstruction. It requires that violators act with an intent to injure, intimidate, or interfere with a person. And the statute is limited to those persons who engage in such conduct because someone sought or provided reproductive health services. Finally,

---

**2.** The Court also rejects plaintiffs' claim that FACE impermissibly infringes their freedom of association guaranteed by the first amendment. FACE does not prohibit plaintiffs from associating with others or from joining with them to express a particular viewpoint. As the U.S. Supreme Court recently observed, "the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights." *Madsen,* —— U.S. at ——, 114 S.Ct. at 2530.

Congress provided definitions for certain key terms that focus the statute on the specific problems that it was addressing.

■ Accordingly, the Court concludes that FACE does not violate the free exercise clause or the Religious Freedom Restoration Act.[3]

### C. Congressional Power to Pass FACE

■ Plaintiffs argue that Congress lacked power under the commerce clause to pass FACE, and that Congress therefore enacted FACE in violation of the tenth amendment. Plaintiffs further argue that Congress also lacked the authority to pass FACE under § 5 of the fourteenth amendment.

When considering whether a particular exercise of congressional power is valid under the commerce clause, the Court must merely determine: 1) whether Congress had a basis for finding that the regulated activity affects interstate commerce, and 2) whether the means it selected to eliminate the problem are reasonable and appropriate. *See Hodel v. Virginia Surface Mining & Reclamation Association,* 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981). In considering these questions, the "court must defer to a congressional finding that a regulated activity affects interstate commerce, if there is any rational basis for such a finding" and end its inquiry "once [it] determines that Congress acted rationally in adopting a particular regulatory scheme." *Id.*

In passing FACE, Congress collected ample evidence that the conduct prohibited un-der FACE affects interstate commerce. Thus, for example, Congress concluded that "[c]linics and other abortion service providers clearly are involved in interstate commerce, both directly and indirectly. They purchase medicine, medical supplies, surgical instruments and other necessary medical products, often from other States; they employ staff; they own and lease office space; they generate income." Senate Report, at p. 31. Also, "many of the patients who seek services from these facilities engage in interstate commerce by traveling from one state to obtain services in another." *Id.* Clinic employees and physicians also travel across state lines to work. Furthermore, Congress found that the types of activities proscribed by FACE have a negative impact on interstate commerce, *reducing the availability of abortion services and the interstate movement of people and goods. Id.* Finally, Congress found that the problem addressed by FACE is nationwide and beyond the ability of individual states to control. *Id.*

The Court further finds that the prohibitions in FACE are a reasonable and appropriate means to address the problem of violence at reproductive health service facilities. The Court concludes that Congress had the power under the commerce clause to enact FACE.[4] Having so concluded, the Court need not address plaintiffs' remaining argument that § 5 of the fourteenth amendment does not give Congress the independent authority to enact FACE.

### D. Conclusion

For the foregoing reasons, the Court concludes that FACE does not infringe plain-

---

3. Similarly, plaintiffs' challenge based on the establishment clause also fails as a matter of law because, as discussed above, FACE clearly has a secular purpose, and it neither fosters excessive government entanglement with religion nor has a primary effect of advancing or inhibiting religion. *See, e.g., Harris v. McRae,* 448 U.S. 297, 319–20, 100 S.Ct. 2671, 2689–90, 65 L.Ed.2d 784 (1980).

4. Plaintiffs cite *United States v. Cortner,* 834 F.Supp. 242 (M.D.Tenn.1993) in support of their argument that Congress had no power to enact FACE pursuant to the commerce clause. In that case, the U.S. District Court for Middle District of Tennessee held that Congress lacked the authority under the commerce clause to enact the Anti Car Theft Act of 1992, 18 U.S.C. § 2119, because there is an insufficient nexus between "carjacking" and interstate commerce. *Id.* at 243–44. In contrast to the facts of *Cortner,* as discussed above, there is a sufficient nexus between the activities that are the subject of FACE and interstate commerce to support Congressional authority to enact FACE pursuant to the commerce clause. Moreover, even if that case were on point, it is not binding authority here and, in any case, its reasoning has since been rejected by at least one other court addressing precisely the same argument concerning precisely the same federal statute. *See, e.g., United States v. Payne,* 841 F.Supp. 810 (S.D.Ohio 1994) (upholding Congress' power under the commerce clause to enact the Anti Car Theft Act of 1992).

tiffs' rights under the first and fifth amendments, or their putative statutory rights under the Religious Freedom Restoration Act, and Congress had full authority to enact FACE under the Commerce Clause. Because plaintiffs have failed to state a claim upon which relief can be granted, defendant's motion to dismiss the complaint is **GRANTED** and this action is **DISMISSED.**

Because this action is dismissed for failure to state a claim upon which relief can be granted, plaintiffs' motion for a preliminary injunction is **DENIED AS MOOT.**

**IT IS SO ORDERED.**