**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**George L. WILSON and Colin L. Hudson,**
**Defendants–Appellants.**

Nos. 97–2904, 97–2946.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1998.

Decided Aug. 6, 1998.

sections (a)-(c) than on subsection (d). To this extent, *Seligsohn* seems to ignore subsection (d)

altogether.

Eric J. Klumb (argued), Thomas P. Schneider, Office of the United States Attorney, Milwaukee, WI, for Plaintiff–Appellee.

Thomas M. Barrett (argued), Wauwatosa, WI, for Defendant–Appellant Wilson.

James R. Donohoo (argued), Milwaukee, WI, for Defendant–Appellant Hudson.

Before CUMMINGS, KANNE and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendants George Lyman Wilson and Colin Lester Hudson appeal from their convictions for violating the Freedom of Access to Clinic Entrances Act of 1994, 18 U.S.C. § 248 ("FACE"), raising a facial challenge to the Act's constitutionality. Specifically, defendants claim that FACE violates their First Amendment right of freedom of speech by deterring the expression of a particular point of view and their right of freedom of association. They further allege that their convictions for conspiring to engage in conduct prohibited by FACE violate the First Amendment. In addition, defendant Hudson claims that the district court abused its discretion in requiring him to participate in a mental health program as a condition of his supervised release.

Based on this Court's decision in *United States v. Soderna*, 82 F.3d 1370 (7th Cir. 1996), certiorari denied, —— U.S. ——, 117 S.Ct. 507, 136 L.Ed.2d 398 (1996), and the Supreme Court's decision in *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), we sustain the constitutionality of FACE and affirm defendants' convictions. We also find that the district court did not abuse its discretion in requiring defendant Hudson to participate in a mental health program as a condition of his supervised release.

## I. Facts

Defendants are abortion protestors. On September 20, 1996, defendants blockaded the two entrances to the Wisconsin Women's Health Care Center ("the Clinic") in Milwaukee. The Clinic is in the business of providing reproductive health care services, including abortions.

In order to block the entrances, defendants encased themselves in cars, defendant Hudson in a brown Buick at the front entrance and defendant Wilson in a dark blue Oldsmobile at the rear. Specifically, defendants sat on the ground underneath the cars with their bodies extending upright into the cars through holes cut in the floor. The defendants, facing the rear of the cars, were restrained by two I-beams sandwiched together with a circle cut out around each defendant's neck. The I-beams were fastened together by a slide bolt mechanism and were filled with different sizes of pipe in order to conceal the release mechanism.[1] Signs and flyers in the area and on the cars contained the following warnings:

> As soon as it is clear that no babies will be murdered in this building today, arrangements will be made for their release * * *. Please do not recklessly endanger the lives of the persons in these vehicles for the purposes of opening a building where pre-born babies will be brutally murdered.

> I have made arrangements to be released at the end of the day, when the killing center is closed. Any attempts to free me from this device would needlessly endanger my life, and cause certain death for as many as 20 children.

When a receptionist for the dental office located in the building arrived at 7:45 a.m., she saw a tan-colored car situated in front of

---

1. Each of the defendants had participated in a prior clinic obstruction using a similar mechanism. Defendant Wilson was indicted. We reversed the district court's dismissal of the charges, concluding that Congress had Commerce Clause authority to pass FACE, *United States v. Wilson*, 73 F.3d 675 (7th Cir.1995), certiorari denied, —— U.S. ——, 117 S.Ct. 47, 136 L.Ed.2d 12 (1996), and Wilson was convicted on remand. Defendant Hudson also was previously indicted and convicted, and we affirmed the convictions on appeal. *United States v. Soderna*, 82 F.3d 1370 (7th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 507, 136 L.Ed.2d 398 (1996).

the main entrance to the office building. She called the police and did not attempt to enter the building. At 8:00 a.m., Maureen Taylor, a counselor at the Clinic, arrived for work, and patients with appointments at the Clinic began to arrive shortly thereafter. Patients were scheduled to be seen beginning at 8:30 a.m. The Clinic could be entered in only two ways: a main entrance and a rear exit. The car occupied by defendant Wilson completely obstructed the rear entrance. The car situated at the front entrance, however, had not been placed directly against the front door but rather was placed at an angle with its right-front corner wedged up against the bricks that extended out into the vestibule, leaving an opening on the left side of the car. Thus individuals could enter the building if they turned sideways and squeezed past the car.

Between 9:00 and 9:30 a.m., officers from the Milwaukee Police Department arrived at the scene followed by firefighters, and at 9:45 a.m., the first patients entered the Clinic. The fire department, unable to tow the cars for fear of injuring defendants, spent approximately four hours in order to extricate defendants from the cars.[2] As firemen were working, several abortion opponents engaged in protest and sidewalk counseling in front of the Clinic.

On October 1, 1996, defendants were charged with using physical obstruction to intentionally intimidate and interfere with persons because they were trying to provide or obtain reproductive health services under 18 U.S.C. § 248. On November 19, 1996, a conspiracy charge under 18 U.S.C. § 371 was added, charging defendants with conspiracy to commit a violation of 18 U.S.C. § 248. The government sought to include a conspiracy charge because under the substantive count, proof of an actual "physical obstruction" was required, whereas under the conspiracy charge, all that was required was proof that the defendants intended such an obstruction, whether or not successful. On April 24, 1997, a jury convicted defendants on all counts. Defendant Wilson was sentenced to 120 days in prison and ordered to pay a fine of $1,500 and restitution of $454.97. Defendant Hudson was sentenced to 24 months in prison and ordered to pay a fine of $3,000 and restitution of $454.97. The court also imposed upon defendant Hudson a three-year term of supervised release, beginning upon his release from prison. As a special condition of his supervised release, the court ordered Hudson to "participate in a mental health treatment program and * * * take any and all prescribed medications as may be directed by the treatment provider and participate in any psychological and/or psychiatric evaluations and counseling as may be directed by [his] supervising probation officer." Defendants appeal. We affirm.

## II. Freedom of Access to Clinic Entrances Act

In 1994, reacting to a nationwide problem of violent protests and blockades aimed at both abortion clinics and their patients and employees, "Congress enacted the Freedom of Access to Clinic Entrances Act, an act making it a federal crime to engage in certain prohibited activities interfering with the provision or obtainment of 'reproductive health services.'" *United States v. Bird*, 124 F.3d 667, 670 (5th Cir.1997), certiorari denied, —— U.S. ——, 118 S.Ct. 1189, 140 L.Ed.2d 320 (1998). "Between 1977 and early 1993, more than 1,000 acts of violence against abortion providers and more than 6,000 clinic blockades were reported in the United States." *American Life League, Inc. v. Reno*, 47 F.3d 642, 646 (4th Cir.1995), certiorari denied, 516 U.S. 809, 116 S.Ct. 55, 133 L.Ed.2d 19 (1995). The wave of violence, intimidation, and interference included "[m]urder, arson, kidnappings, bombings and bomb threats, assaults, death threats, trespasses, vandalism, gas attacks, military-style assaults, and blockades of entrances to clinics." *United States v. Soderna*, 82 F.3d 1370, 1372 (7th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 507, 136

**2.** As the firemen were working to release defendant Wilson from the car blocking the rear exit, the fire chief advised Wilson that because people were able to enter the building, he may want to release himself. While a city ordinance required that a second exit be available before people could enter the building, the fire chief had determined that the building could be used safely because the fire department was present to assist in case of a fire.

L.Ed.2d 398 (1996). Because the local law enforcement agencies were unable or sometimes unwilling to take action to protect the patients and staffs of these facilities, Congress concluded that the Act was necessary to protect and promote public safety and health. *American Life*, 47 F.3d at 646.

The Act "forbids the use of force or threats of force or physical obstruction deliberately to injure, intimidate, or interfere with people seeking to obtain or to provide any reproductive medical or other health services, not just abortion, and also people seeking to exercise their religious rights in a church or other house of worship." *Soderna*, 82 F.3d at 1372–1373. Specifically, the Act provides criminal and civil penalties against anyone who:

> (1) by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services[.]

18 U.S.C. § 248(a).

The Act defines "interfere" as "to restrict a person's freedom of movement." § 248(e)(2). "Intimidate" is defined as placing "a person in reasonable apprehension of bodily harm to him– or herself or to another." § 248(e)(3). The statutory definition of "physical obstruction" is "rendering impassable ingress to or egress from a facility that provides reproductive health services or to or from a place of religious worship, or rendering passage to or from such a facility or place of religious worship unreasonably difficult or hazardous." § 248(e)(4). The Act also provides that "[n]othing in this section shall be construed—(1) to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution." § 248(d).

The criminal penalties prescribed by the Act vary with the nature of the violation, depending on whether the offense was violent or not, and whether the offender was a first-time or repeat offender. A first offense involving a nonviolent physical obstruction carries a penalty of imprisonment of not more than six months and a fine of not more than $10,000. § 248(b).

## III. Analysis

### A. FACE Does Not Violate the Free Speech Clause of the First Amendment

■ Defendants claim that FACE facially violates the Free Speech Clause of the First Amendment, contending that it restricts their freedom of expression and imposes an impermissible viewpoint-based restriction on speech. We review a determination of the constitutionality of a federal statute *de novo*. *Smith v. Shalala*, 5 F.3d 235, 238 (7th Cir. 1993), certiorari denied, 510 U.S. 1198, 114 S.Ct. 1309, 127 L.Ed.2d 660 (1994).

Defendants' argument that FACE violates their right of freedom of speech under the First Amendment is foreclosed by our decision in *United States v. Soderna*, in which we held that the Access Act does not unconstitutionally impinge on freedom of speech.[3] 82 F.3d at 1374–1375.

■ Reviewing our decision in *Soderna*, we first emphasized that the conduct prohibited by FACE is not protected by the First Amendment. *Id.* at 1375. Quoting this Court's decision in a case involving cross-burning used to intimidate, the *Soderna* panel stressed that "some forms of expression are harmful and damaging to others and, as such, do not enjoy the protecting cover of speech in the constitutional sense." *Id.* (quoting *United States v. Hayward*, 6 F.3d 1241, 1250 (7th Cir.1993), certiorari denied, 511 U.S. 1004, 114 S.Ct. 1369, 128 L.Ed.2d 46 (1994)). FACE prohibits the use of force, threat of force, and physical obstruction. Because the Supreme Court has held that

---

**3.** Defendants recognize as much, conceding that "[a]lthough decided by the Seventh Circuit, issues of the constitutionality of FACE are revisited in these appeals in order to preserve the appel-

lants' opportunity for petitioning the Supreme Court for discretionary review." (Appellants' Br. at 2).

the government can constitutionally punish all three of these types of conduct, FACE does not target protected speech. See *Wisconsin v. Mitchell*, 508 U.S. 476, 484, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993) (physical assault is not expressive conduct protected by the First Amendment); *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 773, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) (threats are proscribable under the First Amendment); *Cameron v. Johnson*, 390 U.S. 611, 617, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) (government may punish physical obstruction); *Cox v. Louisiana*, 379 U.S. 536, 555, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965) ("[a] group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations"). Under the First Amendment, individuals are allowed to engage in peaceful nontrespassory picketing which does not deprive others of their personal liberty or property rights. "But the amendment does not extend its protection to the next step, where the picketer physically impedes entry to the picketed premises." *Soderna*, 82 F.3d at 1375. Such action goes beyond protest and interferes with the personal liberty and property rights of others. *Id.* While it is expressive conduct, it is not protected by the First Amendment. *Id.* ("To persuade and to blockade are importantly different forms of action, though both are expressive."). As in *Soderna*, defendants' blockade of the entrance to the abortion clinic here, while certainly expressive of their opposition to abortion, interfered with the personal liberty and property rights of others by making it physically impossible (or at a minimum unreasonably difficult) for staff and patients to enter the clinic. *Id.* Such conduct is not entitled to constitutional protection.

■ While FACE targets unprotected activities, to the extent that the Act may have some effect on expressive conduct, it is necessary to examine it under the First Amendment. The threshold question in our First Amendment analysis is whether the Act is "content-based," that is whether it regulates speech or conduct "based on hostility or favoritism towards the underlying message expressed." *R.A.V. v. City of St. Paul, Minn.*,

505 U.S. 377, 386, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). If a statute is content-based, it must survive strict scrutiny to be constitutional. If a statute is content-neutral, it is subject only to intermediate scrutiny. *American Life*, 47 F.3d at 648.

■ The *Soderna* panel concluded that FACE is content-neutral and is not aimed at deterring the expression of a particular viewpoint, specifically those opposed to abortion. *Soderna*, 82 F.3d at 1374. The Act punishes anyone who engages in the prohibited conduct, irrespective of the person's viewpoint and does not target any message based on content. *American Life*, 47 F.3d at 651. "The Access Act thus does not play favorites: it protects from violent or obstructive activity not only abortion clinics, but facilities providing pre-pregnancy and pregnancy counseling services, as well as facilities counseling alternatives to abortion." *Terry v. Reno*, 101 F.3d 1412, 1419 (D.C.Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997).

The Supreme Court has commented that "where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory [or otherwise disfavored] idea or philosophy." *Soderna*, 82 F.3d at 1376 (quoting *R.A.V.*, 505 U.S. at 390, 112 S.Ct. 2538). Unlike the ordinance struck down in *R.A.V.* which was "explicitly directed at expression [namely hate speech]," FACE presents a different situation because it targets conduct not protected by the First Amendment [namely force, threat of force, and physical obstruction]. *Id.* (quoting *Wisconsin v. Mitchell*, 508 U.S. at 487–489, 113 S.Ct. 2194). As we stated in *Soderna*, "[i]t is not at all clear that the statute is 'aimed' at [the suppression of the viewpoint of] the anti-abortion movement," *id.* at 1374, because the Act is concerned not with "bad taste in the marketplace of ideas and opinions" but rather is concerned with "conduct that, rather than being purely symbolic, like flag-burning, * * * has, like political assassination, * * * physical consequences that are independent of symbolic significance." *Id.* at 1374–1375.

■ We also note that FACE's motive requirement, which limits the statute's reach to those who engage in the proscribed conduct "because" the victim is obtaining or providing reproductive health services, does not render the Act content or viewpoint-based because such a requirement does not discriminate against speech or conduct that expresses an abortion-related message. *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir.1996), certiorari denied, —— U.S. ——, 117 S.Ct. 613, 136 L.Ed.2d 538 (1996). FACE prohibits anyone from obstructing access to a clinic to prevent women from getting abortions, regardless of the message expressed. For example, "FACE would prohibit striking employees from obstructing access to a clinic in order to stop women from getting abortions, even if the workers were carrying signs that said, 'We are underpaid!' rather than 'Abortion is wrong!'" *Id.* The motive requirement simply narrows the reach of the Act so as not to cover conduct such as random crimes that might happen to occur in the vicinity of an abortion clinic. *Id.* (commenting that use of motive requirement to filter out conduct is common, emphasizing that various statutes that prohibit discrimination because of the victim's race, sex, age, etc., have been held constitutional by the Supreme Court).

The *Soderna* panel also emphasized that the fact that most of the persons who violate FACE oppose abortion does not transform it into a content-based statute. *Soderna*, 82 F.3d at 1376. The Court reasoned that while the Act is being enforced primarily against abortion opponents, "this is because it is mainly they who are interfering with the provision of pregnancy-related services." *Id.* "A group cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." *Id.*; see also *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (upholding law prohibiting the destruction of draft cards even though most people who burned their draft cards opposed the Vietnam War); *Dinwiddie*, 76 F.3d at 923 (the fact that a statute disproportionately punishes individuals who hold a particular viewpoint does not render a statute content-based since "there is no disparate-impact theory in First Amendment law"); *Terry*, 101 F.3d at 1419 ("[t]hat the majority of those whose conduct the statute punishes probably oppose abortion does not call the statute's neutrality into question").

■ Because we find that FACE is content– and viewpoint-neutral, it is subject to intermediate scrutiny. A statute survives intermediate scrutiny "if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Dinwiddie*, 76 F.3d at 923–924 (quoting *O'Brien*, 391 U.S. at 377, 88 S.Ct. 1673). Because FACE furthers the significant government interest of protecting women who are in need of reproductive health services, is not aimed at expression, and is narrowly tailored in that it only prohibits the use of force, threat of force, and physical obstruction and leaves open sufficient alternative means to express an anti-abortion message such as picketing in a non-violent, nonobstructive manner, it survives constitutional scrutiny. *Id.* at 924; see *Soderna*, 82 F.3d at 1375, 1376 ("[t]he Freedom of Access to Clinic Entrances Act does not close the channels of protest to the right to life movement;" defendants can disseminate their message using forms of protest not involving "violence or blockades or other illegal tactics disrespectful of personal liberty and property rights").

Therefore, to the extent defendants claim that FACE violates the First Amendment's Free Speech Clause or discriminates against viewpoint, we reject their arguments and affirm based on the reasoning of our decision in *Soderna*.

## B. FACE Does Not Violate the Right of Freedom of Association

Defendants raise an issue not explicitly decided by this Court in *Soderna*. They contend that FACE is unconstitutional because it impermissibly infringes on their freedom of association guaranteed by the First Amendment.

■ Freedom of expression and association are closely related. See *NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Buckley v. Valeo*, 424 U.S. 1, 244, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (Burger, C.J., concurring in part, dissenting in part) ("I have long thought freedom of association and freedom of expression were two peas from the same pod."); *Citizens Against Rent Control/Coalition for Fair Housing v. City of Berkeley, Cal.*, 454 U.S. 290, 300, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981). Although the Constitution does not explicitly refer to freedom of association, the Supreme Court has protected this right because "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed. * * * Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984). Forbidding individuals acting in concert with others from engaging in certain activities while placing no such prohibition on individuals acting alone is an impermissible restraint on the right of association. *Rent Control*, 454 U.S. at 296, 102 S.Ct. 434. Freedom of association permits individuals to associate for lawful purposes and provides " 'a right to join with others to pursue goals independently protected by the [F]irst [A]mendment.' " *Lawline v. American Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir.1992), certiorari denied, 510 U.S. 992, 114 S.Ct. 551, 126 L.Ed.2d 452 (1993) (quoting Laurence Tribe, American Constitutional Law, 1013 (2d ed.1988)). But the goals must be independently protected by the First Amendment; there is no right to join with others to engage in illegal activities that are not protected by the First Amendment.

Conduct which is unlawful if engaged in by an individual is not entitled to protection merely because it is engaged in by a group.

The Supreme Court addressed this issue in *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994). In rejecting petitioners' freedom of association claim, the Court noted that there is no constitutional protection for association for illegal purposes. *Id.* at 776, 114 S.Ct. 2516. In *Madsen*, abortion protestors had objected to the language in an injunction that covered those acting "in concert" with the defendants, contending that it impermissibly limited their freedom of association. The Supreme Court disagreed, stating that

> [P]etitioners are not enjoined from associating with others or from joining with them to express a particular viewpoint. The freedom of association protected by the First Amendment does not extend to joining with others for the purpose of depriving third parties of their lawful rights.

*Id.*

■ FACE does not prohibit individuals from associating with others to express a particular viewpoint. However, FACE prohibits individuals from using force, threat of force, or physical obstruction because such conduct is not protected by the First Amendment, and thus prohibits individuals from associating with others to engage in the same unprotected conduct. Having determined that FACE constitutionally proscribes certain conduct, we necessarily established that defendants have no freedom of association right to engage in the same prohibited conduct by acting in concert with others. See *Council for Life Coalition v. Reno*, 856 F.Supp. 1422 (S.D.Cal.1994) (holding that FACE does not violate abortion protestors' right of freedom of association because the First Amendment does not extend to joining with others to deprive third parties of their lawful rights). Defendants cannot use associational rights to immunize conduct which would be criminal if engaged in by an individual.[4] Because defendants may be prosecuted

---

4. Indeed, defendants recognize as much, conceding that the First Amendment protects "the exercise of the fundamental rights of free speech and association to combine with others in pursuit of common goals by *lawful* means" (Appellants' Br. at 25) (emphasis added); however, defendants here have not combined with others using lawful means.

individually under the First Amendment when they violate FACE, they also may be prosecuted when they join with others to do so.

## C. Defendants' Conspiracy Convictions Do Not Violate the First Amendment

Defendants contend that their conspiracy convictions violate the First Amendment because individuals engaged in merely expressive activity might be found guilty of conspiring to violate FACE. In support of their argument, defendants rely on the Supreme Court's decision in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982), where the Court was faced with the issue of whether all members of a group could be held liable for the violent acts of a few. Holding that "[c]ivil liability may not be imposed merely because an individual belonged to a group," *id.* at 920, 102 S.Ct. 3409, the Court stated that "[t]he right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected." *Id.* at 908, 102 S.Ct. 3409. Thus the Supreme Court refused to impose liability on individual members of the NAACP without clear proof of a specific intent to further an unlawful aim embraced by that group, concluding that individuals with no intent to violate the law cannot be held liable for the illegal acts of others. *Id.* at 920, 102 S.Ct. 3409.

However, the Supreme Court was referring only to individuals who had no intent to violate the law, individuals who were properly exercising their First Amendment rights by engaging in peaceful protests. Individuals who actually engage in illegal acts and individuals who conspire to violate the law can be held liable for their actions. *Id.* at 909, 102 S.Ct. 3409 (quoting *De Jonge v. Oregon*, 299 U.S. 353, 365, 57 S.Ct. 255, 81 L.Ed. 278 (1937)), 458 U.S. at 920 n. 56, 102 S.Ct. 3409; see also *United States v. Daly*, 756 F.2d 1076, 1081–1082 (5th Cir.1985), certiorari denied, 474 U.S. 1022, 106 S.Ct. 574, 88 L.Ed.2d 558 (1985) (upholding conviction for conspiring to defraud the United States, concluding that because the statutes at issue

punish conduct, not speech, individuals may be convicted for conspiracy to engage in that conduct and that "an illegal course of conduct is not protected by the First Amendment merely because the conduct was in part initiated, evidenced, or carried out by means of language"). Unlike the injunction in *Claiborne Hardware* which, if upheld, would have suppressed legitimate, protected expression by individuals who had no intent to violate the law, FACE does not suppress legitimate expression or association. FACE targets expression and association which deprives third parties of their lawful rights. FACE does not punish mere association with individuals who engage in unprotected conduct; it is aimed at individuals who themselves deprive third parties of their lawful rights. See *United States v. Ricketson*, 498 F.2d 367, 374–375 (7th Cir.1974), certiorari denied, 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974) (deposition statute does not infringe upon defendant's freedom of association because it is based on defendant's personal participation in organized criminal activity, not merely his association with organized criminals). FACE does not prevent groups from associating for lawful purposes such as peaceful picketing and does not hold individuals engaging in lawful conduct liable for the illegal acts of others. In fact, the government here only charged Wilson and Hudson as co-conspirators; those who were protesting in the vicinity and engaging in sidewalk counseling were not charged with conspiracy, since they did not have an intent to violate the law as required by *Claiborne Hardware*. Defendants have not suggested that the government has sought to enforce FACE against individuals engaged in lawful conduct merely because of those individuals' membership in an association. While a charge of conspiracy to violate FACE does not require proof of actual obstruction, it still requires that defendants intended such an obstruction. Defendants here had such intent and thus appropriately were charged and convicted of conspiracy.

Defendants' argument seems to suggest that there is a First Amendment right to conspire to break a valid law. However, conspiracies have not been held to be per se unlawful because they violate the right of

freedom of association. See *Los Angeles Meat and Provision Drivers Union, Local 626 v. United States,* 371 U.S. 94, 101 n. 5, 83 S.Ct. 162, 9 L.Ed.2d 150 (1962) (in rejecting appellants' claim that decree which ordered dissolution of an association when its members conspired to violate the antitrust laws violated their right of freedom of association, Supreme Court noted that such a contention, "carried to its logical conclusion, would render unconstitutional not only many of the provisions of the antitrust laws, but all general criminal conspiracy claims as well"). Therefore we hold that defendants' conspiracy convictions are compatible with the First Amendment.

## D. District Court Did Not Abuse its Discretion in Requiring Hudson to Participate in Mental Health Program as a Condition of Supervised Release

As a condition of supervised release, the court ordered that defendant Hudson participate in a mental health treatment program, take any prescribed medications as directed by the treatment provider, and participate in any psychological and/or psychiatric evaluation and counseling as directed by his probation officer. Defendant Hudson claims that this condition constitutes an abuse of discretion.

We defer to the district court's decision to impose special conditions of supervised release and review the district court's judgment under the deferential abuse of discretion standard. *United States v. Kosth,* 943 F.2d 798, 800 (7th Cir.1991). A district judge has the discretion to order any condition of supervised release "it considers to be appropriate," *id.;* 18 U.S.C. § 3583(d), as long as it meets the statutory requirements of § 3583(d). First, the condition must be "reasonably related" to certain sentencing factors set forth in 18 U.S.C. § 3553(a), including the need for the sentence to provide the defendant with "medical care[ ] or other correctional treatment in the most effective manner." §§ 3553(a)(2)(D) and 3583(d)(1). Second, the condition must involve "no greater deprivation of liberty than is reasonably necessary" to accomplish the sentencing objectives of § 3553(a). § 3583(d)(2). Third,

the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." § 3583(d)(3). See also *United States v. Johnson,* 998 F.2d 696, 697–698 (9th Cir.1993). The sentencing guidelines contain similar provisions. See U.S.S.G. §§ 5D1.3(b) and 5D1.3(d)(5).

The district court's decision to order defendant Hudson to participate in a mental health treatment program as a condition of his supervised release was justified based on the information, primarily from the defendant's mother, that demonstrated that he was in need of such treatment. His mother indicated that he showed signs of emotional disturbance beginning in high school and that his behavior was erratic enough that she attempted to have him evaluated, but he refused. She also thought he had mental health problems while in the military. She reported that both sides of the family had a history of mental illness. A former employer also noted that Hudson displayed "mood swings and depression."

In addition, the district judge had ample opportunity to observe defendant Hudson. He appeared both pro se and through counsel, providing the court with even more opportunity to assess his behavior. Contrary to defendant's assertion, the district court was not confusing behavior arising from a mental condition and behavior representing a rational decision to protest abortion as seen by the fact that the court did not require codefendant Wilson to participate in a mental health program. The district court made its decision based on an individualized assessment of Hudson's past and present behavior and as such did not abuse its discretion.

## IV. Conclusion

Based on the foregoing, we affirm the judgment of the district court and sustain the constitutionality of FACE. Having decided the exact issue in *Soderna,* we reaffirm this Court's holding that FACE does not violate the Free Speech Clause of the First Amendment. We also conclude that FACE does not violate the defendants' right of freedom of association, since "[t]he freedom of association protected by the First Amendment does not extend to joining with others

for the purpose of depriving third parties of their lawful rights." *Madsen*, 512 U.S. at 776, 114 S.Ct. 2516. In addition, we hold that individuals may be convicted for conspiring to engage in conduct prohibited by FACE. Finally, the district court did not abuse its discretion in requiring defendant Hudson to participate in a mental health program as a condition of his supervised release. The decision of the district court is AFFIRMED.